

**FILED**
**U. S. DISTRICT COURT**
**EASTERN DISTRICT ARKANSAS**

JAN **2 3** 2019

**JAMES W. McCORMACK, CLERK**
By:_____
**DEP CLERK**

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

KATHY BLAGG                                                        PLAINTIFF

VS.                           NO. $4:19-cv-49-KGB$

EATON CORPORATION, EATON HEALTH and WELFARE
ADMINISTRATIVE COMMMITTEE and
SEDGWICK CLAIMS MANAGEMENT SERVICES, INC.          DEFENDANTS

## COMPLAINT

COMES NOW Plaintiff, Kathy Blagg, by and through her attorney, Daniel A. Webb, and for her complaint states:

### PARTIES AND JURISDICTION

1.      This is an action to recover benefits pursuant to section 502(a), (e)(1) and (f) of the Employee Retirement Income Security Act of 1974 ("ERISA"). 29 U.S.C. § 1132(a), (e)(1) and (f).

2.      This Court has federal question subject matter jurisdiction and personal jurisdiction over the parties and is the proper venue pursuant to 28 U.S.C. § 1391(b).

3.      Plaintiff, Kathy Blagg, is a resident of White County, Arkansas. Kathy Blagg ("Blagg") participated in employer provided insurance plans for long term disability benefits. (the "Plan") while employed by Eaton Corporation. (See LTD Plan attached as exhibit A).

4.      The Plan is self-insured with Eaton Corporation ("Eaton") serving as Employer and Plan Sponsor. Eaton is a fiduciary under the Plan and a party in interest. Eaton is a foreign corporation and upon information and belief may be

This case assigned to District Judge Baker
and to Magistrate Judge Harris

served in Arkansas at the C T Corporation System, 124 W. Capitol Ave, Ste. 1900, Little Rock, Arkansas, 72201.

5.     Eaton Health and Welfare Administrative Committee serves on behalf of Eaton as the Plan Administrator (the "Committee").  To the extent that the Committee is a stand-alone entity capable of legal action separate from Eaton it is a party in interest and may served with legal process at 1000 Eaton Boulevard, Cleveland, OH 44122.

6.     Sedgwick Claims Management Services, Inc. ("Sedgwick") is the Claims Administrator for Eaton and a party in interest.   Sedgwick is a foreign corporation and may be served with legal process at the Corporation Service Company, 300 Spring Building, Ste. 900, 300 S. Spring Street, Little Rock, AR 72201.

7.     At all times relevant hereto each Defendant was doing business throughout the United States and within the Eastern District of Arkansas.

## **FACTS**

8.     While employed by Eaton, Blagg participated in the Plan.  While a Plan participant, Blagg developed L5 radiculopathy, SI joint dysfunction, lumbar spondylosis, degenerative spondylosis of the cervical spine, IP joint synovitis degenerative disk disease and other serious musculoskeletal problems.  Blagg's conditions, especially as relate to her spine, have rendered her totally and permanently disabled, and she suffers from severe physical limitations such that she is unable to perform even sedentary work on a sustained basis. Initially, the Defendants paid benefits to Blagg, but on or about August 5, 2016; despite

Blagg's severe medical problems, the Defendants, without legal justification, stopped paying benefits to Blagg and refuse to pay Blagg the long-term disability benefits owed.

9.      Blagg has complied with all conditions precedent to entitle her to benefits under the Plan, and she received a final denial from the Plan Administrator on or about February 1, 2018.   (See denial letter attached as exhibit B)

10.     Blagg was approved for Social Security disability with an onset date of October 2014, and an offset for benefits payable by the Plan may be applicable. (See Award letter attached Exhibit C)

11.     Eaton is the sponsor of the Plan and one of the fiduciaries responsible for approving or denying claims and paying them if approved. Accordingly, Defendant, Eaton, maintains a conflict of interest in the present situation.

12.     Blagg has been forced to retain the services of counsel in order to bring this action, and the Defendants are obligated to pay attorney fees in addition to the unpaid benefits owed Blagg with pre and post judgment interest.

WHEREFORE, Plaintiff prays for an order awarding her: back benefits, current benefits and future benefits pursuant to the Plan, pre-judgment interest, post judgment interest, attorney's fees, costs and all other appropriate and proper relief.

Respectfully submitted,

DANIEL A. WEBB, Ark. Bar No. 2000113
111 Center Street, Ste. 1200
Little Rock, Arkansas 72201
(501) 372-2400



EXHIBIT
*A*

Health and Insurance Benefits

# Summary Plan Description for Eaton Employees



Powering Business Worldwide

## EATON EMPLOYEE BENEFIT PLANS OVERVIEW

This Summary Plan Description (SPD) summarizes the main features of the Eaton health care and insurance benefit plans effective January 1, 2016. The front section has information about who is covered in the Plans and when coverage begins and ends, including:

- Eligibility for yourself and your dependents
- How to enroll in the Plans
- Making certain changes during the year
- What happens while you are away from work on a leave of absence
- When your coverage begins and ends
- How to continue coverage under COBRA

The middle sections provide detailed information about each benefit plan:

- Medical (including prescription drug)
- Dental
- Vision
- Reimbursement Accounts (dental/vision and dependent care)
- Work/Life Solutions and Adoption Benefits
- Life and Accidental Death & Dismemberment (AD&D)
- Short Term Disability
- Long Term Disability

The back section, Plan Administration, gives you details about how the Company administers the Plans, including coordination of benefits, claims appeals procedures and your ERISA rights.

If you have any questions about your benefits, you can:

- Contact the claims administrator for the specific benefit plan (see the Plan Administration section)
- Contact the Eaton Service Center at Fidelity

---

The intent of this booklet is to satisfy the Employee Retirement Income Security Act of 1974 (ERISA) requirement for a Summary Plan Description (SPD). The entire Plan and applicable group policies, not only this SPD, will be determinative in all matters pertaining to rights and obligations with respect to each Plan.

The information in this booklet has been provided by Eaton and is the sole responsibility of Eaton.

Eaton Corporation is sometimes referred to as "Eaton" or the "Company" in this booklet.

## THE EATON SERVICE CENTER AT FIDELITY

Eaton, as Plan Sponsor, has retained the services of Fidelity Employer Services Company, a division of Fidelity Investments Institutional Services Company, Inc., an independent contractor, to assist the Plan Administrator with certain administrative functions (other than claims administration) in connection with the Eaton Corporation Flexible Benefits Program. Fidelity Employer Services Company performs these services under the name "Eaton Service Center at Fidelity."

General information about your benefits is available by accessing the Fidelity web site or by calling the Eaton Service Center at Fidelity. The web site is generally available 24 hours a day, seven days a week. Phone service representatives are available weekdays, excluding holidays, from 8:30 a.m. to midnight, Eastern Time.

### Contacting the Eaton Service Center at Fidelity

There are two ways to contact the Eaton Service Center at Fidelity:

**1. By Computer: Fidelity Web Site**

You can access Fidelity's web site on the Internet.

- Go to:        EatonBenefits.com or the EatonBenefits.com link on JOE
- Click on:   Eaton Service Center at Fidelity in the left margin
- Enter:       Your Username (which is your Social Security number [SSN] or Customer ID number) and your Password

**2. By Toll-free Telephone**

You can call the Eaton Service Center at Fidelity at 1-866-EATON01 (1-866-328-6601) to speak with an Eaton phone service representative. Trained service representatives are available to answer your questions Monday through Friday (excluding holidays recognized by the New York Stock Exchange) from 8:30 a.m. to midnight, Eastern Time.

---

**Special Needs**

If you need language interpretation with immediate over-the-phone assistance, contact the Eaton Service Center at Fidelity and ask for Language Line translation. A service representative will conference in a translator to assist you with your call.

If you need to contact the Eaton Service Center at Fidelity from outside the United States or Canada, log on to AT&T Direct (www.att.com/traveler) to look up the country access code or download a free wallet card with access codes. You can also get the code by contacting an AT&T operator. When calling from outside the U.S., use this access code first and then dial 1-866-328-6601.

To call with the assistance of TDD service for the hearing or speech impaired, dial 1-888-343-0860.

---

### Your Password

You use your password to access personal information via Fidelity's web site or by telephone. Be sure to remember your password. If you need a new password, contact the Eaton Service Center at Fidelity to establish a new one. Confirmation of the new password will be sent to your home address in approximately three business days. If you receive a password confirmation that you did not authorize, contact the Eaton Service Center at Fidelity immediately.

## WHO'S COVERED AND WHEN

WHO IS ELIGIBLE FOR COVERAGE ..........................................................................................4
    Coverage for Yourself.....................................................................................................4
    Coverage for Your Spouse/Domestic Partner................................................................4
    Coverage for Your Children............................................................................................4
    Coverage for a Disabled Child........................................................................................5
    Proof of Dependent Eligibility.........................................................................................5
    Qualified Medical Child Support Orders (QMCSO) and National Medical Support Notices ....................6

ENROLLING FOR COVERAGE......................................................................................................6
    Your Benefit Options.......................................................................................................7
    If You Do Not Enroll .......................................................................................................9
    Benefit Plans You Do Not Enroll In ...............................................................................9
    Couples Who Are Both Eligible for Eaton Benefits ........................................................9
    When Your Youngest Child Reaches Age 25 ................................................................9
    Benefit Contributions, Social Security and Taxes .......................................................10

WHEN COVERAGE STARTS .......................................................................................................11

CHANGING YOUR COVERAGE DURING THE YEAR..................................................................12
    Change in Status Events ..............................................................................................12
    Certain Other Events ....................................................................................................14
    Special Enrollment Rights for Medical, Dental and Vision Coverage ..........................14

BENEFITS COVERAGE WHILE YOU ARE NOT ACTIVELY AT WORK......................................15
    Non-Occupational or Occupational Short Term, Long Term or Extended Disability Leave of
    Absence........................................................................................................................15
    Company-Approved Leaves of Absence.......................................................................15
    Temporary Layoff.........................................................................................................16

CONTINUING REIMBURSEMENT ACCOUNT PARTICIPATION WHILE NOT ACTIVELY AT WORK ............16
    Non-Occupational or Occupational Short Term, Long Term or Extended Disability Leave of
    Absence........................................................................................................................16
    Unpaid FMLA Leave of Absence .................................................................................17
    Other Unpaid Leave of Absence ..................................................................................17
    Paid Leave of Absence ................................................................................................17
    Temporary Layoff.........................................................................................................18

WHEN COVERAGE ENDS...........................................................................................................19
    When Your Employee Coverage Ends .........................................................................19
    When Dependent Coverage Ends ...............................................................................20
    Extended Dependent Coverage Period if You Die ........................................................20
    Continuing Coverage ...................................................................................................20
    Certificate of Creditable Coverage ..............................................................................20

CONTINUING COVERAGE THROUGH COBRA...........................................................................21
    When You Become Eligible for COBRA (Qualifying Events) ........................................21
    Starting with COBRA ...................................................................................................22
    How Long COBRA Coverage Lasts..............................................................................23
    Paying for COBRA Coverage .......................................................................................24
    When COBRA Coverage Can Be Terminated ..............................................................24

## WHO IS ELIGIBLE FOR COVERAGE

### Coverage for Yourself

You are eligible for the benefits plans described in this SPD if you are:

- A regular salaried or non-represented hourly employee of the Company or an affiliate in the United States, and
- Regularly scheduled to work 20 or more hours per week.

If your employment is covered by a collective bargaining agreement, you are eligible for these benefit plans only if your collective bargaining agreement provides for it. Specific eligibility requirements and benefit terms may be stipulated by your bargaining agreement and are explained in the appropriate benefit sections.

Leased and temporary employees are not eligible for coverage.

### Coverage for Your Spouse/Domestic Partner

Your spouse/domestic partner is eligible for the Eaton Medical, Dental, Vision, Work/Life Solutions, and Life and AD&D Plans provided he or she is:

- Your spouse by a legally valid marriage (same or opposite sex).
- Your domestic partner (same or opposite sex) who:
  - is at least 18 years of age;
  - is not related to you;
  - has lived with you for at least six consecutive months;
  - you share an intimate, committed relationship with and intend for the relationship to last indefinitely;
  - you are in an exclusive relationship with and neither of you is legally married to or in a domestic partnership with anyone else; and
  - shares documented joint financial responsibility with you.

  **For Life and AD&D.** To insure your domestic partner under the Supplemental Life and AD&D Plan, the insurer also requires that you and your domestic partner have a mutually dependent relationship so that each has an insurable interest in the life of the other. Your domestic partner must satisfy the description above, or as an alternative, be registered as your domestic partner, civil union partner or reciprocal beneficiary with a government agency where such registration is available.

Contributions for domestic partner coverage may have different tax consequences.

### Coverage for Your Children

**Medical, Dental, Vision and Work/Life Solutions Plans.** Each of your children is eligible for the Medical, Dental and Vision Plans until the end of the year in which the child reaches age 26 provided:

- The child is your or your spouse's natural or adopted child,
- The child is a child for whom you (the employee) have legal guardianship or a similar court order that confers authority and the corresponding duty to care for the person and property of the child under applicable law, or
- You can claim the child as an exemption within the meaning of the U.S. Internal Revenue Code on your federal income tax return for the year of coverage and the child is:
  - your domestic partner's natural or adopted child, or
  - a child for whom your spouse or domestic partner has legal guardianship or a similar court order that confers authority and the corresponding duty to care for the person and property of the child under applicable law.

4

*Exceptions for Tobacco Cessation Program and On-site Health Center*
To participate in the Tobacco Cessation Program, a dependent must be at least age 18. To access the Health Center, a dependent must be at least age 2 and enrolled in an Eaton Medical Plan.

**Life and AD&D Plan.** The eligibility requirements for covering a child in the Life and AD&D Plan are somewhat different. To start, a child can be covered from 15 days of age (or birth for AD&D coverage) until the end of the calendar year in which he or she reaches age 25. He or she must be unmarried. Your eligible children are then:

- Each of your children by birth or legal adoption, including full-time students who do not live with you;

- Each of your spouse's or domestic partner's children by birth or legal adoption provided:

    - the child's legal residence is with you, and

    - the child is a member of your household,

- Each child for whom you (the employee) are the legally appointed guardian provided the child's legal residence is with you.

To provide Life and AD&D Plan coverage, you must be able to validly claim any child listed above as an exemption, within the meaning of the U.S. Internal Revenue Code, on your federal income tax return for the year of coverage. If you can't, he or she is eligible for Life and AD&D Plan coverage if you are required under your divorce decree or similar court order to provide medical coverage for the child. Such a child is also eligible for coverage if:

- Your former spouse can validly claim the child as an exemption on his or her federal income tax return for the year of coverage,

- You and your former spouse provide more than one-half of the child's support for the calendar year, and

- The child is in your custody, or in the custody of your former spouse, for more than one-half of the calendar year.

States set their own insurance laws, and certain states have an <u>expanded definition of a child for Life insurance and AD&D insurance purposes</u>. That means that certain states let you provide insurance for children who may not qualify as your dependents under the Internal Revenue Code (IRC).

## Coverage for a Disabled Child

A totally and permanently disabled child described in the bulleted sections above who is totally and permanently disabled before his or her coverage would otherwise end because of age may qualify for continued coverage. To qualify, the disabled child must be unable to engage in any substantial gainful activity due to a medically determinable physical or mental condition that can be expected to result in death or to be of long, continued or indefinite duration. In addition, the child must be eligible to be claimed as an exemption, within the meaning of the U.S. Internal Revenue Code, on your federal income tax return for the year of coverage.

You must submit evidence of your child's total and permanent disability to the Claims Administrator within 31 days of the date the child's coverage would otherwise end. You must provide proof of the child's continuing disability as requested. If you disagree with a determination that a child is not totally and permanently disabled, you can file an appeal under the <u>claims appeal process</u>.

## Proof of Dependent Eligibility

When you enroll a dependent in a Plan, you are representing to the Claims Administrator that the dependent meets the eligibility requirements for the Plan.

From time to time, the Plan Administrator may ask you to verify the eligibility of a dependent. You may need to provide his or her Social Security number and other documents. Other documents may include, but are not limited to, a marriage license, birth certificate and copies of federal tax returns. For example, a child's eligibility for coverage in any year may be based on whether you have validly claimed the child as an exemption on your most recent federal income tax return and your certification that you are able to do so for the current year.

You will be given a reasonable amount of time to submit the requested information and documents. If you do not do so, coverage for the dependent will end.

**Qualified Medical Child Support Orders (QMCSO) and National Medical Support Notices**

An employee's child who does not meet all the eligibility requirements for Plan coverage may be "assigned" the right to receive benefits by a qualified medical child support order (QMCSO). These orders are issued based on state domestic relations laws. The order may be issued by a court of competent jurisdiction or through an administrative process established by state law that has the force and effect of law. You will be notified when a support order is served on the Plan Administrator. Within a reasonable period of time you will then be informed if it a QMCSO.

State child support enforcement agencies are required to enforce health care coverage provisions in child support orders through the use of the National Medical Support Notice (NMSN). When completed properly, the NMSN is deemed to be a QMCSO.

You may request a copy of the Plan's QMCSO procedures without charge by contacting QDRO Consultants Company at 1-800-527-8481 and identifying yourself as an Eaton employee.

## ENROLLING FOR COVERAGE

Eaton provides you with an enrollment worksheet when you are first eligible to participate in the Eaton Flexible Benefits Program and before each annual enrollment. The personalized worksheet explains how to enroll and shows your:

- Plan options,

- Employee costs or credits, and

- Default coverage: the benefits and coverage levels Eaton assigns you if you don't actively make enrollment decisions.

You can enroll over the phone or online through the Eaton Service Center at Fidelity. Enrollment periods are:

- Within 60 days of your date of hire,

- Within 60 days of the date you transfer to an eligible employee status, and

- During the annual enrollment period each fall.

When you first enroll, your enrollment choices — including default elections — authorize the Company to take payroll deductions to pay the employee cost of your Plan options and coverage levels for the rest of the year. (The "year" is the Plan year, which is the same as the calendar year.) During annual enrollment, your elections authorize payroll deductions for the coming year.

**Your Benefit Options**

When you enroll, you choose from the following benefits:

| Plan Options | Description | | Paying for Coverage |
|---|---|---|---|
| **Health Care Plans** | | | |
| **Medical**<br>• Consumer Health 90 with HSA<br>• Consumer Health 80 with HSA<br>• No coverage | Coverage levels (you can choose a different level for each plan):<br>• Employee only<br>• Employee and spouse/domestic partner<br>• Employee and child(ren)<br>• Employee and spouse/domestic partner and child(ren) | | *You and Eaton share the cost of coverage in the Medical, Dental and Vision Plans. You pay your share with before-tax dollars, except you may pay after-tax for domestic partner coverage if he or she is not your dependent for tax purposes.* |
| **Dental**<br>• Dental Plan<br>• No coverage | | | |
| **Vision**<br>• Vision Plan<br>• No coverage | You and your eligible dependents must be in the same medical option. | | |
| **Reimbursement Accounts** | | | |
| • Dental/Vision Reimbursement Account (DVRA)<br>• No coverage | For eligible dental and vision expenses | Contribute between $10 – $208 per month ($120 - $2,496 per year) | *You contribute before-tax dollars to a reimbursement account to pay eligible expenses that come up during the year. Use-it-or-lose-it rule applies.* |
| • Dependent Care Reimbursement Account (DCRA)<br>• No coverage | For eligible child and elder care expenses | Contribute between $10 - $416 per month ($120 - $4,992 per year) | |

| Plan Options | Description | Paying for Coverage |
|---|---|---|
| **Life and Accidental Death and Dismemberment (AD&D) Insurance** | | |
| **Life Insurance**<br><br>Eaton pays for coverage equal to one times annual base pay (minimum of $25,000).<br><br>**AD&D Insurance**<br><br>Eaton pays for coverage equal to:<br>• One times annual base pay for certain collectively bargained employees<br>• Two times annual base pay for other employees.<br>**See page 110 to confirm coverage.** | You can choose other life insurance amounts:<br>• Additional coverage equal to 2 to 8 times your annual pay level with rates based on age and, if you have AD&D coverage of two times annual base pay, tobacco user status ($10 million maximum)<br>• 25%, 50% or 75% of annual base pay and receive a credit toward other benefits<br><br>You can choose other AD&D amounts:<br>• Additional coverage equal to 2 to 8 times your annual pay level ($10 million maximum)<br>• One level less than Eaton provides or no coverage and receive a credit toward other benefits | *Eaton pays the cost of basic life and AD&D coverage as noted. Premiums for coverage of more than $50,000 are reported as imputed income.*<br><br>*You pay for additional coverage with before-tax dollars.* |
| **Spouse/Domestic Partner Life and AD&D** | You can choose coverage for your spouse/domestic partner:<br>• Flat dollar amounts of $50,000 / $100,000 / $150,000 / $200,000 / $250,000<br>• No coverage | *You pay with before-tax dollars for:*<br>• Spouse AD&D<br>• Child AD&D |
| **Child Life and AD&D** | You can choose coverage for your eligible children:<br>• Flat dollar amounts of $10,000 / $15,000 / $20,000 / $25,000<br>• No coverage<br><br>Your cost is the same regardless of how many eligible children you have. | *You pay with after-tax dollars for:*<br>• Spouse/domestic partner life insurance<br>• Child life insurance<br>• Domestic partner AD&D<br><br>*Taxation of child AD&D coverage varies by state. See <u>Paying for Child AD&D Insurance</u>.* |
| **Disability Coverage** | | |
| **Long Term Disability Plan**<br><br>Eaton pays for Option 1 — coverage of 50% of your monthly base pay.<br><br>**Certain collectively bargained employees have other arrangements. See page 135 to confirm eligibility.** | You can choose additional coverage:<br>• Option 2 — 60% of monthly base pay<br>• Option 3 — 70% of monthly base pay | *Eaton pays the cost of Option 1 coverage. You pay for additional coverage with before-tax dollars.*<br><br>*Long term disability benefits you receive from the Plan are taxable income.* |

**If You Do Not Enroll**

*As a newly eligible employee*, if you do not enroll within the 60-day timeframe for new employees, you will be assigned the following coverage only:

| Plan | Default Coverage |
|------|------------------|
| Medical | Consumer Health 90 for you only |
| Long Term Disability | Option 1: 50% of monthly base pay |
| Employee Life | One times annual base pay |
| Employee AD&D | One times annual base pay for certain production employees represented by a collective bargaining agent<br><br>Two times annual base pay for other employees |

The employee contribution for the Consumer Health 90 medical plan option will be deducted from your paycheck. If you do not want Eaton medical coverage, you must elect Medical — No Coverage when you enroll. In that case, you will have no medical or prescription drug coverage under the Eaton plan; you are certifying you have medical coverage elsewhere — for example, through a health care program maintained by your spouse's employer.

*During the annual enrollment period,* if you do not enroll, Eaton assigns you the same Plan options and coverage levels you have in place at the end of the year for the next year. Payroll deductions for your Plan options and coverage levels will continue for the coming year. If your option is not available for the next year, you will be assigned the default coverage shown on your enrollment worksheet.

**Benefit Plans You Do Not Enroll In**

You do not enroll in some benefit plans because Eaton pays the full cost of coverage. If you are eligible, you automatically participate in the:

- Short Term Disability Plan
- Work/Life Solutions Plan

**Couples Who Are Both Eligible for Eaton Benefits**

You and your spouse/domestic partner may both be eligible to enroll in Eaton-sponsored benefit plans. For example, you may both be active employees of Eaton or a participating subsidiary, or one may be a retiree.

In this case, you have the following *Medical, Dental and Vision Plan* enrollment options:

- You and your spouse/domestic partner may each elect coverage under your own plan. Each of you may cover different eligible children, or one of you may cover all of the children. In this option, neither of you may be covered as a spouse/domestic partner; or

- One of you may enroll as the employee and the other as the spouse/domestic partner along with any eligible children. All members of the family must be in the same Medical Plan option.

You may provide spouse/domestic partner *Life and AD&D insurance* for each other in addition to any employee life insurance you have through Eaton. Both of you may elect life and AD&D insurance for your eligible children.

**When Your Youngest Child Reaches Age 25**

Children are eligible for Child Life Insurance and Child AD&D Insurance until their 25th birthdays. If you have been purchasing insurance for your child(ren), you should elect the "No Coverage" option during annual enrollment in the fall of the year your youngest child reaches age 25. It is your responsibility to stop coverage when your youngest child reaches age 25; coverage does not end automatically.

For example, if your youngest child turns age 25 on June 23, 2014, you must elect "No Coverage" during the annual election period for 2015 Child Life and AD&D benefits.

Note that medical, dental, vision and Work/Life Solutions coverage is available until the end of the year in which your child reaches age 26.

9

## Benefit Contributions, Social Security and Taxes

**Effective Date of Payroll Deductions.** Increases or decreases in payroll deductions resulting from an enrollment or mid-year change in Plan coverage will go into effect as soon as administratively possible. Retroactive deductions will not be taken and retroactive refunds will not be made.

**Impact on Social Security Benefits.** You generally do not pay Social Security taxes on the before-tax contributions you make for coverage in the Flexible Benefits Program. This means your Social Security benefits at retirement or during a period of disability may be slightly less if:

- You earn less than the Social Security wage base, or

- Your before-tax deductions reduce your taxable wages below the Social Security wage base.

If your taxable wages are more than the Social Security wage base, your Social Security benefits are not affected.

In most circumstances, your before-tax deductions for coverage do not affect other Eaton benefit plans such as life insurance, disability, savings plan and pension.

**Impact on Taxes.**
*Before-tax Contributions*
The Eaton Corporation Flexible Benefits Program is a cafeteria plan under Section 125 of the Internal Revenue Code. Employee contributions are deducted from your paycheck on a before-tax basis as permitted under current federal tax law. Certain state and local taxes may apply.

*Credits in the Flexible Benefit Program*
Some employee life insurance and AD&D options provide less coverage than the Company-paid insurance amounts. If you choose one of these options, you receive a credit toward other benefits in the Flexible Benefits Program. If you do not use the credits, they are included in your regular paycheck as taxable income. Unused credits are not payable during any period you do not receive a paycheck but are still eligible for benefits.

*Paying for Domestic Partner Coverage*
If you cannot validly claim your domestic partner as an exemption within the meaning of the U.S. Internal Revenue Code on your federal income tax return, your contributions for coverage of your domestic partner are deducted from your paycheck on an after-tax basis. The monetary value of your partner's benefit coverage, less your after-tax contributions, is considered taxable income to you.

*Paying for Child AD&D Insurance*
States set their own insurance laws, and certain states have an <u>expanded definition of a child for Life insurance and AD&D insurance purposes</u>. As a result, certain states let you provide insurance for children who may not qualify as your dependents under the Internal Revenue Code (IRC). If you live in one of these states and choose child AD&D coverage, you must pay for coverage on an after-tax basis if you are covering more than one child and any one of them is not your IRC dependent.

Contributions for child AD&D coverage are automatically taken from your pay on a before-tax basis. If any child you are covering does not qualify as an IRC dependent, you must contact the Eaton Service Center at Fidelity to request that your contributions for child AD&D coverage be made on an after-tax basis. If the contribution is not handled correctly, there may be tax consequences.

If the dependent status of your children changes during annual enrollment or because of a mid-year change in family status and all of the children meet the definition of an IRC dependent, contact the Eaton Service Center at Fidelity again to request that your contribution for child AD&D coverage be switched back to a before-tax basis.

## WHEN COVERAGE STARTS

When you are newly eligible, your benefit plan coverage generally starts on the later of:

- Your date of employment,

- The date you transfer to eligible status, or

- The effective date of coverage for newly participating locations of Eaton or U.S. subsidiaries.

Dependent coverage generally starts on the date you become eligible. However, if a dependent — other than a newborn child 15 days of age or older — is in the hospital or similar facility for medical care or treatment on that date, his or her life and AD&D coverage will not begin until he or she is released.  Your initial benefit choices typically stay in effect until the end of the year.

The benefit choices you make during annual enrollment typically start on the next January 1 and stay in effect for the year.

Exceptions to these start dates are:

- If evidence of good health is required for increased coverage, the higher coverage does not become effective until the evidence of good health is submitted and approved.

- For short term disability, long term disability and life and AD&D coverage for yourself, you must be actively at work on the date your coverage is due to begin, or else coverage — including any elections made during annual enrollment — does not start until the day you return to active work.

- For short-term disability, any initial employment periods specified for production employees represented by a collective bargaining agent take precedence.

Under certain circumstances, you can change your coverage option during the year if you have a qualified change in status or other event. See "Changing Your Election during the Year" for more information.

---

**Actively at Work**

"Actively at work" or "active work" means the performance of duties as required or assigned by the Company.

You are considered to be actively at work for purposes of the Plan if you are on paid vacation or Company holiday on your initial effective date.

---

## CHANGING YOUR COVERAGE DURING THE YEAR

Internal Revenue Service (IRS) and Plan rules restrict the benefit plan changes you can make during the year. You may, though, be allowed to change your coverage during the year if certain events occur. These events are called "change in status events," and the related IRS and Plan rules are extensive. The following is a brief summary.

You can change your benefit plan elections for any reason during the next annual enrollment period, and the change will be effective at the start of the next calendar year.

### Change in Status Events

You may be allowed to change your benefit plan coverage if you experience a change in status event that follows IRS and Plan rules. Your benefit changes must be consistent with the event, as determined by the Plan Administrator. For example, if you get married you can cancel your medical coverage only if your spouse is adding you under his or her medical plan.

You must notify the Eaton Service Center at Fidelity of the change in status event and make allowable benefit changes within 31 days (unless noted otherwise) after the date of the event. Otherwise, you will need to wait until the annual enrollment period to make the change.

Change in status events include the following, which may affect your participation in some or all of the Plans:

- Change in your legal marital status;
- Change in the number of your eligible dependents;
- Change in employment status for you, your spouse, your domestic partner or your dependent child;
- Your child or domestic partner satisfies (or no longer satisfies) dependent eligibility requirements;
- The start or end of adoption proceedings;
- Change in the permanent residence of your dependents from a foreign location to the U.S.; and
- For medical coverage, your, your spouse's/domestic partner's or your child's enrollment in a Health Insurance Marketplace medical plan due to a special enrollment or annual open enrollment period for the Marketplace plan.

Plus, you may be able to change your Dependent Care Reimbursement Account (DCRA) election for the following events:

- A change in your dependent day care expenses, or
- A leave of absence or layoff.

**Timing and Start Date for Dependent Eligibility Changes.** When your change in status affects a dependent's eligibility for coverage, you may be able to add, remove or change coverage for you and your dependents, consistent with the event. The timeframes shown below apply. For medical coverage, you will also be able to change your medical option. Your change in coverage will start as shown below.

| Reason for Dependent Eligibility Change | Change in Coverage Starts on the Date* ... | You Must Notify the Eaton Service Center at Fidelity Within ... |
|---|---|---|
| **Dependent Gains Eligibility** | | |
| Legal guardianship or a similar arrangement that confers authority (and the corresponding duty) to care for the person and property of the child under applicable law | The court order becomes effective | 31 days |
| Regaining dependent eligibility | Your dependent again meets eligibility requirement | |
| Marriage | Of marriage | 60 days

31 days for LTD and Life and AD&D Insurance |
| Reaching domestic partner eligibility | The person has lived with you for six consecutive months | |
| *Medical, Dental and Vision Plans:* Change in permanent residence from outside the U.S. to inside the U.S. | The dependent moves to the U.S. | |
| Birth | Of birth | Six months |
| Adoption or placement for adoption | Child is placed in your residence | |
| **Dependent Loses Eligibility** | | |
| Divorce, annulment, legal separation | Of divorce, annulment, legal separation | 31 days |
| Death | Of death | 31 days |
| Covered child or domestic partner no longer meets eligibility requirements | Dependent no longer meets eligibility requirements | 31 days |

*_Exceptions_ may apply for the start of Life and AD&D Insurance as well as LTD coverage for yourself.*

**Employment Changes.** If the change in status event that affects you, your spouse, your domestic partner or a dependent child relates to termination, start of employment or a change in work schedule, you may be able to change your coverage level and/or Plan options or enroll in benefits coverage to the extent the change is consistent with the event. Any allowable change starts as of the date of the applicable event if you notify the Eaton Service Center at Fidelity and make your new election within 31 days of the event.

## Certain Other Events

Certain other events may also occur that allow you to change your election in some or all Plans. For example:

- Taking a leave of absence under the Family and Medical Leave Act (FMLA) or because of qualifying military service,

- Certain court orders (such as qualified medical child support orders),

- Entitlement (or loss of entitlement) to Medicare, or

- A significant change in your spouse's or your domestic partner's benefits coverage or cost under another employer's plan.

Any change to your election must be made with the Eaton Service Center at Fidelity within 31 days of the event and be consistent with the type of event you have experienced.

## Special Enrollment Rights for Medical, Dental and Vision Coverage

If you do not enroll yourself or your dependents (including your spouse/domestic partner) because you have other medical, dental or vision coverage, you may be able to enroll yourself or your dependents in the Plan if your other coverage ends or the employer stops contributing to your or your dependents' other coverage. For medical coverage, the Healthy Incentive program rules will still apply to you. You must contact the Eaton Service Center at Fidelity and make your enrollment election within 31 days of the date the other coverage ends or the employer stops contributing.

In addition, if you gain a new dependent as a result of marriage, domestic partner eligibility, birth, adoption or placement for adoption, you may be able to enroll yourself and your dependents. You must request enrollment through the Eaton Service Center at Fidelity within 60 days after the marriage or the date of domestic partner eligibility, or within six months after the date of birth, adoption or placement for adoption.

If coverage under Medicaid or a state Children's Health Insurance Program (CHIP) changes for you or a dependent, you may be able to change your medical plan enrollment election as indicated below:

- Enroll in Eaton medical coverage if coverage under Medicaid or a CHIP plan ends because of loss of eligibility for you or a dependent.

- Enroll in Eaton medical coverage if you or your dependent becomes eligible for a premium assistance subsidy under Medicaid or CHIP.

- Cancel Eaton medical coverage if you or a dependent becomes eligible for Medicaid.

You must contact the Eaton Service Center at Fidelity to change your election within 60 days of the date of the change in eligibility for Medicaid or CHIP.

## BENEFITS COVERAGE WHILE YOU ARE NOT ACTIVELY AT WORK

You can generally continue your Eaton benefit plan coverage while you are not actively at work on a Company-approved leave of absence by paying the required employee contribution for coverage. If you stop making the required contributions, your coverage ends at the end of the month for which the last required contribution was paid.

Unless noted otherwise, Short Term Disability Plan and Work/Life Solutions Plan coverage continues during an approved leave of absence. The cost of this coverage is paid by the Company.

Because the reimbursement accounts operate under IRS provisions for a given tax year, the Dental/Vision Reimbursement Account (DVRA) and Dependent Care Reimbursement Account (DCRA) have separate rules for continuing participation while not at work. Please see the next section for details.

### Non-Occupational or Occupational Short Term, Long Term or Extended Disability Leave of Absence

When a non-occupational or occupational illness, accidental injury or pregnancy prevents you from working, you may continue coverage under the Medical, Dental, Vision, Life and AD&D, and Long Term Disability Plans for the duration of your short term disability leave.

You can extend coverage for an additional 12 months after your short term disability leave ends if you are receiving benefits from the Long Term Disability Plan. This extension does not apply if you are receiving benefits from an Eaton pension plan, regardless of whether you are on a long term disability leave of absence or your Eaton employment has ended.

To continue coverage, you are required to pay the employee contribution for coverage on:

- A before-tax basis if you are receiving disability benefits paid through the Eaton payroll system, or
- An after-tax basis if you are not receiving disability benefits paid through the Eaton payroll system. You are not charged any employee contribution for Long Term Disability Plan coverage.

### Company-Approved Leaves of Absence

If you are on a Company-approved leave of absence, as listed below, you may continue your coverage under the Medical, Dental, Vision, Life and AD&D, and Long Term Disability Plans during your leave. To continue coverage, you are required to pay the employee contribution for coverage on:

- A before-tax basis if you are being paid through the Eaton payroll system, or
- An after-tax basis if you are on an unpaid leave. You are not charged the employee contribution for Long Term Disability Plan coverage, except while on a MULA or VULA.

**Personal or Educational Leave.** If you are granted an unpaid personal or educational leave of absence, you may continue your coverage for up to six consecutive months. For a paid leave, you may continue coverage for the duration of the leave.

**Family and Medical Leave Act (FMLA) Leave of Absence.** If you have been employed by Eaton for at least 12 months and have worked a minimum of 1,250 hours within the last 12 months, the FMLA entitles you to 12 weeks of unpaid, job-protected leave each year. Leaves are allowed for family and medical reasons specified in the FMLA. See your Human Resources Department for information concerning the FMLA. You may continue your coverage for the duration of an FMLA leave.

**Military Reserve Leave of Absence.** If you are granted a military reserve leave of absence, you may continue your coverage for the duration of your leave.

**Active Military Leave of Absence.** If you are called to active military duty, your benefit plan coverage continues under the provisions of the Company military leave policy. The length of time you may continue coverage varies by military conflict.

**Mandatory Unpaid Leave of Absence (MULA) or Voluntary Unpaid Leave of Absence (VULA).** If you are required or volunteer to take an unpaid leave of absence, you may continue coverage for the duration of your leave.

**Temporary Layoff**

If you are temporarily laid off, you may continue coverage under the Medical, Dental, Vision, Life and AD&D Plans for up to six consecutive months if you pay the required monthly employee contribution on an after-tax basis. Short Term Disability and Long Term Disability Plan coverage ends while you are on layoff.

> Note: If your employment is covered by a collective bargaining agreement, coverage under the Plan may be continued for a greater or lesser period of time than described above if a continuation period is specified by the collective bargaining agreement. Any continuation periods specified by a collective bargaining agreement take precedence over the applicable continuation provisions described here.

## CONTINUING REIMBURSEMENT ACCOUNT PARTICIPATION WHILE NOT ACTIVELY AT WORK

You may be able to continue participating in the Dental/Vision Reimbursement Account (DVRA) and/or Dependent Care Reimbursement Account (DCRA) Plans even if you are not actively at work. If you are not working due to any of the situations described below, your annual election amount does not change. Reimbursement account deposits are collected through one or more of the following methods:

- Deductions continue to be made from your paycheck;

- You are billed for your deposits; or

- After you return to work from an unpaid leave of absence, the amount deducted from the remainder of the year's paychecks is increased so you will meet your annual election amount.

You cannot be reimbursed for dependent care expenses you incur while you are not actively at work; for example, while you are on a leave of absence or layoff. Because this federal law affects DCRA reimbursements, you may make a mid-year change in your election amount.

### Non-Occupational or Occupational Short Term, Long Term or Extended Disability Leave of Absence

If you are on leave due to a non-occupational or occupational disability and receive disability benefits through the Eaton payroll system, your deductions for reimbursement account deposits continue to be made from your paychecks.

If you are not receiving disability benefits through the Eaton payroll system:

- You are billed for DVRA contributions during any full calendar month in which you are on leave. (You pay contributions for any partial month for which you are on leave through increased payroll deductions when you return to work, as described below.) Your DVRA coverage continues until the earlier of:

  - the end of the Plan year (calendar year), or

  - the end of the month before the first month for which you did not pay the monthly billed amount.

- If you return to work during the same calendar year, the amount deducted from the rest of your paychecks for the year is increased so you will meet your annual election amount. DVRA contributions paid through the monthly billing process are taken into account to determine your increased deduction amount. The increased deduction starts in your paychecks as soon as administratively possible after you return to work. See the example on page 93.

- You are **not** billed for Dependent Care Reimbursement Account contributions, and your Dependent Care Reimbursement Account participation continues until the end of the calendar year.

If you are still on a leave at the beginning of a year, you cannot participate in either of the reimbursement accounts until you return to work and elect to participate during the applicable enrollment period.

**Unpaid FMLA Leave of Absence**

If you are granted an unpaid FMLA leave of absence:

- You are billed for your DVRA contributions during any full calendar month in which you are on leave. (You pay contributions for a partial month through increased payroll deductions when you return to work, as described below.) Your DVRA coverage continues until the earlier of:

  - the end of the calendar year; or

  - the end of the sixth calendar month following the last day you were actively at work.

- You are **not** billed for Dependent Care Reimbursement Account contributions, and your Dependent Care Reimbursement Account participation continues until the end of the calendar year.

During your leave you are not required to pay the contributions to the DVRA, and if you do not, the amount deducted from your future paychecks will be increased to recoup the difference. The increased deduction starts in your paychecks as soon as administratively possible after you return to work. Contact the Plan Administrator to determine the amount of the increase and the length of time during which the increased premiums will be deducted.

If you are still on a leave at the beginning of a year, you cannot participate in the Dependent Care Reimbursement Account until you return to work and elect to participate during the applicable enrollment period.

**Other Unpaid Leave of Absence**

If you are granted an unpaid personal, educational, FMLA, active military or military reserve leave of absence, or a mandatory or voluntary unpaid leave of absence (MULA or VULA):

- You are billed for your DVRA contributions during any full calendar month in which you are on leave. (You pay contributions for any partial month for which you are on leave through increased payroll deductions when you return to work, as described below.) Your DVRA coverage continues until the earlier of:

  - the end of the Plan year (calendar year);

  - the end of the sixth calendar month following the last day you were actively at work if you are on personal, educational or military reserve leave;

  - the end of the contribution period if you are on active military leave (the length of the continuation period varies by military conflict); or

  - the end of the month before the first month for which you do not pay the monthly billed amount.

- You are **not** billed for Dependent Care Reimbursement Account contributions, and your Dependent Care Reimbursement Account participation continues until the end of the calendar year.

If you return to work during the same calendar year, the amount deducted from the rest of your paychecks for the year is increased so you will meet your annual election amount. DVRA contributions paid through the monthly billing process are taken into account when determining the amount of the increased deduction. The increased deduction starts in your paychecks as soon as administratively possible after you return to work. See the example on page 93.

If you are still on a leave at the beginning of a year, you cannot participate in either of the reimbursement accounts until you return to work and elect to participate during the applicable enrollment period.

**Paid Leave of Absence**

**Personal, Educational, FMLA or Military Reserve Leave of Absence.** If you are granted a paid personal, educational, FMLA or military reserve leave of absence, your reimbursement account deposits continue to be deducted from your paycheck.

**Active Military Leave of Absence.** If you are called to active military duty, your reimbursement account deposits continue to be deducted from your paycheck as long as you remain eligible to participate in the Plan. The length of time you may continue to participate in the reimbursement accounts varies by military conflict.

**Temporary Layoff**

If you are temporarily laid off:

- You are billed for your DVRA contributions during any full calendar month in which you are on layoff. (You pay contributions for any partial month for which you are on leave through increased payroll deductions when you return to work, as described below.) Your DVRA coverage continues until the earlier of:

  - the end of the Plan year (calendar year),

  - the end of the sixth calendar month following the last day you were actively at work, or

  - the end of the month before the first month for which you did not pay the monthly billed amount.

- You are **not** billed for Dependent Care Reimbursement Account contributions, and your Dependent Care Reimbursement Account participation continues until the end of the calendar year.

If you return to work during the same calendar year, the amount deducted from the rest of your paychecks for the year is increased so you will meet your annual election amount. DVRA contributions paid through the monthly billing process are taken into account when determining the amount of the increased deduction. The increased deduction starts in your paychecks as soon as administratively possible after you return to work. See the example on page 93.

If you are still on layoff at the beginning of a year, you cannot participate in either of the reimbursement accounts until you return to work and elect to participate during the applicable enrollment period.

## WHEN COVERAGE ENDS

### When Your Employee Coverage Ends

Unless you elect continuation coverage under <u>COBRA</u>, if eligible, your coverage under the Eaton health care and insurance Plans ends on the earliest of:

- The last day of the month in which your employment with Eaton ends,
- The last day of the month in which the period for which you are eligible to continue coverage while not actively at work expires,
- The last day of the month in which you are eligible to continue coverage under the terms of an Eaton severance plan or agreement,
- The date you transfer to a non-eligible employee status, or
- The date of your death. If you were an active employee when you died, your dependents may be able to continue their coverage as explained below.

**Dependent Care Reimbursement Account.** Your participation under the Dependent Care Reimbursement Account ends:

- At the end of the calendar year in which:
  - your employment with Eaton ends,
  - you transfer to a non-eligible employee status, or
  - you die.

**Short Term Disability Plan.** Your short term disability plan coverage ends on the earliest of:

- Your last day of active work immediately before the date your employment with Eaton ends,
- Your last day of active work immediately before the date you are laid off from the Company,
- Your last day of active work immediately before your retirement date,
- Your last day on an <u>approved period of leave</u> if you do not you return to active work,
- Your last day of active work immediately before the date you transfer to a non-eligible employee status, or
- The date of your death.

**Long Term Disability Plan.** Your Long Term Disability Plan coverage ends on the earliest of the following dates:

- The date your employment with Eaton ends,
- The date you transfer to a non-eligible employee status,
- The date you go on temporary layoff,
- The last day of the month in which the period that you are eligible to continue coverage while not actively at work expires, or
- The date of your death.

> For all Eaton Plans, if you stop making the required contributions for coverage, your coverage ends at the end of the month for which the last required contribution was paid. Your coverage under the Plans is subject to termination or amendment by the Company at any time for any reason.

**When Dependent Coverage Ends**

Unless continuation coverage is elected under <u>COBRA</u> (if eligible), your dependents' coverage under the Eaton benefit plans they are enrolled in ends on the earliest of the following dates:

- The date on which your coverage ends for a reason other than death;

- The last day of the 12th month following the month in which your death occurs (see below);

- The last day of the month for which you paid the required employee contribution for coverage;

- For your spouse, the date on which he or she is divorced or legally separated from you, or his or her marriage to you is annulled; or

- For each covered dependent child or a domestic partner, the date when such child or domestic partner no longer meets the definition of an eligible dependent.

**Extended Dependent Coverage Period if You Die**

If you die while you are an active employee, your surviving spouse/domestic partner and your eligible dependent children (whether or not there is a surviving spouse/domestic partner) are eligible for an extended period of benefit coverage. By paying the applicable employee contribution for coverage, they can continue their coverage in the Medical, Dental, Vision and/or Life and AD&D Insurance Plans. Coverage can continue for up to 12 months following the end of the month in which you died. Coverage for a dependent child ends during the 12-month period if he or she no longer meets the dependent eligibility requirements.

If your surviving spouse/domestic partner marries any time after your death, the new spouse and his or her dependent children are not eligible to participate in the Plans.

At the end of the 12-month extension period, if your surviving spouse/domestic partner and/or eligible dependent children are still enrolled, they may continue coverage through COBRA. They can continue coverage under COBRA for up to 36 consecutive calendar months following the end of the 12-month extension period.

For the DVRA, your eligible dependents can continue coverage through the end of the calendar year if they pay the required monthly contributions.

**Continuing Coverage**

If your or your dependents' coverage ends, you may be able to continue coverage in the group health plans through <u>COBRA</u>. The <u>conversion</u> and <u>portability</u> options in the Life and AD&D Insurance Plan allow you to continue coverage in an individual insurance policy unless your coverage ended because you did not pay your required contributions.

**Certificate of Creditable Coverage**

If your Medical Plan coverage ends, you will receive a certificate of prior creditable coverage. The certificate shows evidence of your Eaton medical coverage that you can apply toward a preexisting condition exclusion under another medical plan. For the certificate to be valid, you have 63 days from the date your Eaton plan coverage ends to enroll in another plan. Contact your state insurance department for further information.

If you elect COBRA continuation coverage, a second certificate is issued when it ends. Contact the Eaton Service Center at Fidelity for further information.

## CONTINUING COVERAGE THROUGH COBRA

If you lose your eligibility for group health plan coverage for active employees, the Consolidated Omnibus Budget Reconciliation Act (COBRA) allows you to continue your coverage at your own expense in certain situations. In many cases, your covered spouse and dependent children (your qualified beneficiaries) are also eligible.

The Plans that are group health plans and eligible for COBRA coverage are:

- Medical
- Dental
- Vision
- Dental/Vision Reimbursement Account (DVRA) portion of the Reimbursement Account Plans
- Counseling Program, Eaton On-site Health Center and the Tobacco Cessation Program of the Work/Life Solutions Plan

All references to Eaton group health coverage in this section refer to the Plans listed above.

If you choose to continue coverage through COBRA, the Company must provide you the same coverage that similarly situated employees or family members receive. If Plan coverage changes for these similar beneficiaries, your coverage will also change.

This notice generally explains COBRA continuation coverage, when it may become available to you and your family, and what you need to do to protect the right to receive it. The Company has retained the Eaton Service Center at Fidelity as its COBRA compliance administrator for its group health plans.

Make sure the Eaton Service Center at Fidelity has the current addresses of your family members. You should also keep a copy, for your records, of any notices you send to the Eaton Service Center at Fidelity.

### When You Become Eligible for COBRA (Qualifying Events)

You, your spouse and/or dependent children who are covered by Eaton group health coverage may continue coverage through COBRA if you lose your coverage because of your:

- Reduced hours of employment.
- Loss of employment (except for gross misconduct on your part).

Your covered spouse and dependent children may also be able to continue coverage through COBRA if they lose their coverage because you:

- Die.
- Get divorced or legally separated.
- Become entitled to Medicare (under Part A, Part B or both).

In addition, your covered dependent child can continue coverage through COBRA if he or she would lose coverage because of no longer meeting the definition of an eligible dependent.

A child born to, adopted by or placed for adoption with you during the period of COBRA coverage is also eligible for COBRA coverage.

## Starting with COBRA

**Notifying the Eaton Service Center at Fidelity.** Depending on the event that causes you to lose eligibility, either you or Eaton is responsible for notifying the Eaton Service Center at Fidelity.

| Who Notifies the Eaton Service Center at Fidelity | |
|---|---|
| You, your covered spouse or covered dependents, within 60 days of:<br>• Divorce<br>• Legal separation<br>• Child losing dependent status<br>You may need to provide documentation of the above events.<br><br>If you do not notify the Eaton Service Center at Fidelity within 60 days, your rights to continue coverage end. | Eaton, within 30 days of:<br>• Reduction in hours of employment<br>• Termination<br>• Death<br>• Medicare entitlement |

If you need help acting on behalf of a beneficiary who is deemed to be incompetent, contact the Eaton Service Center at Fidelity.

After the Eaton Service Center at Fidelity has been notified, the Eaton Service Center at Fidelity will, in turn, notify you of your right to elect COBRA coverage.

**Enrolling for COBRA Coverage.** Under the law, a qualified beneficiary has 60 days from either the date of loss of coverage or from the date of the notice, whichever is later, to choose COBRA coverage. If you do not choose COBRA coverage, your Eaton group health coverage ends.

You can elect COBRA coverage on behalf of your spouse, and you or your spouse can elect COBRA coverage on behalf of your children. You do not have to show that you are insurable to choose COBRA coverage.

*DVRA*
If you elect to continue your DVRA and you want to use your Acclaris Visa card to pay for eligible expenses, you need to reactivate your card. Call the toll-free phone number on the card and enter the requested information.

---

**Alternatives to COBRA**

There may be other medical coverage options for you and your family through the Affordable Care Act's Health Insurance Marketplace. In the Marketplace, you could be eligible for a tax credit that lowers your monthly premiums right away. You can see what your premium, deductibles and out-of-pocket costs will be before you make a decision to enroll. Being eligible for COBRA does not limit your eligibility for coverage or a tax credit through the Marketplace.

Additionally, you may qualify for a special enrollment opportunity with another group health plan for which you are eligible (such as a spouse's plan), even if the plan generally does not accept late enrollees, if you request enrollment within 30 days.

---

## How Long COBRA Coverage Lasts

**For eligible Plans except DVRA.** You, your covered spouse and your covered children can continue COBRA coverage up to the time period shown below.

| Qualifying Event | How Long COBRA Coverage Lasts | | |
|---|---|---|---|
| | **18 months** | **29 months** | **36 months** |
| You lose coverage because of:<br>• Reduced work hours<br>• Employment ends for any reason other than gross misconduct | Employee<br><br>Spouse<br><br>Children | | |
| You or your dependent is disabled (as defined by Title II or XVI of the Social Security Act) at any time during the first 60 days of COBRA coverage (see below) | Employee<br><br>Spouse<br><br>Children | | |
| You die*, divorce or become legally separated | Spouse (former spouse)<br><br>Children | | |
| You become entitled to Medicare, causing dependents to lose coverage | Spouse<br><br>Children | | |
| Child no longer qualifies as a dependent | Child | | |

\* *If you die while actively at work, the COBRA continuation period for your spouse and dependent children begins on the last day of the 12-month period following the month of your death.*

COBRA coverage may continue past 18 months in certain situations.

- *If you, your covered spouse or your dependent becomes disabled.* COBRA coverage can continue for up to an additional 11 months if Social Security determines the individual is disabled at any time during the first 60 days of COBRA coverage. To receive the extension, the Eaton Service Center at Fidelity must be notified within 60 days of the Social Security disability determination and before the end of the original 18-month period. The extension will end if the disability ends during the 11-month extension period. The Eaton Service Center at Fidelity must be notified within 30 days of any final determination that the individual is no longer disabled.

- *If there is more than one qualifying event.* COBRA coverage for your spouse or child may extend to 36 months if a second event (death, divorce, legal separation, Medicare entitlement or a dependent child no longer qualifies as a dependent under the Plan) occurs during the first 18-month period.

**For DVRA.** If your eligibility ends because of a COBRA-qualifying event, you may continue to participate in the DVRA, but only until the end of the calendar year in which the COBRA event occurs. You contribute to the DVRA on an after-tax basis.

## LONG TERM DISABILITY PLAN

LONG TERM DISABILITY PLAN OVERVIEW.................................................................................135
    Who Is Not Covered.................................................................................................135
    Long Term Disability Contributions .......................................................................135
    Increasing or Decreasing Coverage ......................................................................136

DISABILITIES THE PLAN COVERS........................................................................................137
    Covered Disability...................................................................................................137
    Disabilities the Plan Does Not Cover ....................................................................137

AMOUNT OF THE BENEFIT YOU RECEIVE ..........................................................................138
    Maximum Monthly Long Term Disability Benefit ...................................................138
    Benefits Are Taxable..............................................................................................138
    Reduction of Maximum Long Term Disability Plan Benefit ...................................138
    Minimum Monthly Long Term Disability Benefit ....................................................139

WHEN PAYMENTS BEGIN AND HOW LONG THEY CONTINUE ...........................................140
    Successive Periods of Disability ............................................................................140
    When Long Term Disability Benefits End...............................................................141
    Modified Duty Employment .....................................................................................141
    Rehabilitative Employment During Disability..........................................................141
    Vocational Rehabilitation ........................................................................................142

HOW TO OBTAIN BENEFITS ..................................................................................................142
    Claims for Long Term Disability Benefits ...............................................................142
    Filing Deadline .......................................................................................................142
    Deadline for Responding to Requests for Information ...........................................142
    Claims for Other Disability Benefits .......................................................................142
    How Payments Are Made .......................................................................................143
    Medical Information ................................................................................................143
    Requirement to Update Medical Information...........................................................143

## LONG TERM DISABILITY PLAN OVERVIEW

The Long Term Disability Plan provides a continued source of income if you are sick or injured and cannot work for an extended period of time. During the first 26 weeks of a covered disability, you may be covered by an Eaton Short Term Disability (STD) Plan. If you remain disabled after that time, you may receive a benefit from the Long Term Disability Plan.

This chart shows the maximum monthly benefit provided by each long term disability option.

| Month of Disability | Disability Benefit |
|---|---|
| Weeks 1 – 26: Short Term Disability | The amount of your benefit and when it starts is determined by the STD plan that covers you |
| After 26 weeks until you are no longer disabled or you reach a specific age | The amount of income replaced depends on your LTD option in effect on the date your disability begins: <br>• Option 1: 50% of your monthly base pay <br>• Option 2: 60% of your monthly base pay <br>• Option 3: 70% of your monthly base pay |

The monthly LTD benefits you receive are coordinated with certain other benefits you may be eligible for (see "Amount of the Benefit You Receive — Reduction of Maximum Long Term Disability Benefit") so that 50%, 60% or 70% of your monthly base pay is replaced.

### Who Is Not Covered

The Long Term Disability (LTD) Plan is not offered to all employees. You are not covered by the Long Term Disability Plan if you are a production employee represented by a collective bargaining agent at the following facilities:

- Bloomington, CA
- Ellisville, MO
- Fayetteville, AR
- Hicksville, NY
- Highland, IL
- Long Branch, NJ
- Meadowlands, PA
- Syracuse, NY
- Troy, IL

### Long Term Disability Contributions

For new hires, the monthly base pay used to calculate contributions and credits is your monthly base pay on the date of hire. For other eligible employees, the monthly base pay used to calculate contributions and credits is your monthly base pay as of August 1 preceding the Plan year for which the contributions or credits apply. Contributions and credits are subject to review and change by the Company at any time.

**Increasing or Decreasing Coverage**

**Increasing Coverage by One Level.** You may increase your long term disability coverage by one level, from Option 1 (50%) to Option 2 (60%), or from Option 2 (60%) to Option 3 (70%), without providing evidence of good health.

You may increase your coverage by one level during the annual enrollment period held each fall. The increase will become effective at the start of the next year, provided you are actively at work (see page 11) on that day. If you are not actively at work, your increase in coverage becomes effective on the day you return to active work.

You may also increase your coverage by one level if you experience a change in status event. You must request the increase within 31 days of a change in status event, and the increase will become effective on the date the approved change in status occurs. If you are not actively at work on that day, however, your increase in coverage becomes effective on the day you return to active work.

**Increasing Coverage by Two Levels — from Option 1 to Option 3.** You may request to increase your long term disability coverage by two levels during the annual enrollment period held each fall or within 31 days of a change in status event. To increase your coverage by two levels, you will need to provide, at your expense, a completed "Statement of Health" form providing evidence of your good health. The Company designates a third-party organization to review and approve all Statements of Health.

If you fail to submit evidence of good health or if your evidence of good health is found to be unsatisfactory, the increase in your coverage is limited to Option 2 (60%).

*If you request a two-level increase during annual enrollment*, you will receive a Statement of Health form with your enrollment confirmation statement. You must return the completed form before the date specified on the statement. The increase will become effective at the start of the next year provided:

- You are actively at work on that day, and

- The Company receives the necessary third-party approval of your evidence of your good health.

If the approval has not been received by January 1, you will be covered under Option 2 (60%) from January 1 until the first day of the month following the date the Company receives approval of evidence of your good health. If you are not actively at work on that date, the increase to Option 3 (70%) will not become effective until the date you return to active work.

*If you request a two-level increase when you experience a change in status event,* the Eaton Service Center at Fidelity will mail a Statement of Health form to you. You must return the completed form within 31 days of the change in status event. You will be covered under Option 2 (60%) from the date the change in status event occurs. The change from Option 2 to Option 3 (70%) will become effective on the first of the month following the date the Company receives third-party approval of the evidence of your good health. If you are not actively at work on that date, the increase to Option 3 (70%) will not become effective until the date you return to active work.

**Decreasing Your Coverage.** You may decrease your coverage by one or two levels, but you cannot waive coverage in Option 1 (50%).

You may decrease your coverage option during the annual enrollment period, and the decrease will be effective at the start of the next year. If you decrease your coverage when you experience a change in status event, the decrease becomes effective on the date of the approved change in status event.

Case 4:19-cv-00049-KGB   Document 1   Filed 01/23/19   Page 32 of 89

Eaton Summary Plan Description

Long Term Disability Plan

## DISABILITIES THE PLAN COVERS

The Long Term Disability Plan provides you with continuing income if a covered disability prevents you from working for longer than 26 weeks.

To be eligible for LTD benefits, you must be covered by the Plan and:

- Have a covered disability as defined below;

- Be under the continuous care of a licensed health care practitioner; **and**

- Sign and return a copy of the Overpayment Reimbursement Agreement provided by the Claims Administrator. Benefit payments are suspended until the Claims Administrator receives this form.

For a physical disability, the term "health care practitioner" means a fully licensed Doctor of Medicine (M.D.), Doctor of Osteopathy (D.O.), Dental Surgery (D.D.S.), Doctor of Podiatry Medicine (D.P.M.), Doctor of Chiropractic (D.C.), Psychologist, Physician's Assistant (P.A.), Nurse Practitioner (N.P.) or Certified Nurse Midwife (C.N.M.).

If mental illness or alcohol or chemical dependency keeps you from working, you must be receiving continuous care from a psychiatrist or licensed psychologist. For alcohol or chemical dependency, you must be receiving treatment in an accredited residential or outpatient substance abuse treatment facility. Your psychiatrist or licensed psychologist must verify your disability to the satisfaction of the Claims Administrator.

### Covered Disability

You are considered to have a covered disability (see "Disabilities the Plan Does Not Cover" below for exceptions) under the Plan if you are unable to work as the result of an occupational or non-occupational illness or injury. The work you are unable to do is defined differently over the course of a disability. You will be considered disabled:

| If During ... | Your Disability Makes You ... |
| --- | --- |
| Months 1 – 23, including six months of short term disability | Totally and continuously unable to perform the essential duties of your regular position or any suitable alternative position with the Company. |
| Month 24 until you are no longer disabled or retire | Totally and continuously unable to engage in any occupation or perform any work for compensation or profit for which you are, or may become, reasonably well fit by reason of education, training or experience — at Eaton or elsewhere. |

The Company, at its sole discretion, determines the availability and suitability of alternative positions at Eaton.

### Disabilities the Plan Does Not Cover

The Plan does not pay benefits if your disability is the result of:

- Attempted suicide or intentionally self-inflicted injury, while sane or insane;

- Participation in (or as a consequence of prior participation in) the commission of a felony;

- Any act of war, declared or undeclared; service in the armed forces of any country; or performing police duties as a member of any military organization;

- Cosmetic procedures. However, the Plan will pay disability benefits related to reconstructive surgery following a mastectomy; surgery the Medical Plan determines to be medically necessary to correct damage caused by an accident, injury or congenital defect; or complications that prevent your return to work within the normal recovery period for a cosmetic surgery procedure; or

- A preexisting condition, or related to a preexisting condition, if the disability starts within the 12-month period after the date your long term disability coverage becomes effective.

---

**Preexisting Condition Limitation**

You will not be covered under the Plan if, within 12 months of the initial effective date of your coverage, you become disabled due to a preexisting condition. A preexisting condition is any physical or mental condition, regardless of cause, for which medical advice, diagnosis, care or treatment was recommended or received within the six-month period immediately before your Long Term Disability Plan coverage became effective. This limitation does not apply to a period of disability resulting from an injury that occurs or a sickness that begins after your Long Term Disability Plan coverage becomes effective.

If your employment with Eaton ends and you are rehired by Eaton, the preexisting condition limitation does not apply if:

- You were previously covered under the Plan for at least 12 months, and

- Your Plan coverage ended less than 12 months before your rehire date.

---

## AMOUNT OF THE BENEFIT YOU RECEIVE

### Maximum Monthly Long Term Disability Benefit

The maximum monthly long term disability benefit the Plan pays you is based on:

- The long term disability option you elected and in effect on the date your disability starts; and

- Your monthly base pay on the day immediately before your disability starts.

To calculate your long term disability benefit, the Plan uses monthly base pay rate, not including shift differential pay, overtime pay, bonuses or any other extra pay. Your base pay rate is not reduced by contributions or adjustments related to participation in the Eaton Corporation Flexible Benefits Program or any other Eaton program for which you have elected before-tax contributions.

The Plan does not place a maximum on the monthly base pay it considers.

### Benefits Are Taxable

Long term disability benefits are taxable income. Eaton pays for all or a portion of the coverage, and any of your contributions to the cost of coverage are made with before-tax dollars.

Current tax law treats your benefit payments as taxable income. Federal taxes are withheld from benefit payments. State taxes will be withheld at your request when you submit the applicable tax form.

### Reduction of Maximum Long Term Disability Plan Benefit

The 50%, 60% or 70% maximum benefit the Long Term Disability Plan pays for any period of disability is reduced by the total amount of certain other income for which you may be eligible. These sources of other income are any:

- Taxable wages (such as bonuses) payable by Eaton or any of its subsidiaries;

- Disability and/or retirement benefits for which you are eligible under the federal Social Security laws, or under any other federal, state, county, municipal or other program either tax-supported or sponsored by any government. The reduction for Social Security includes primary and auxiliary benefit awards. Auxiliary benefits may be provided to your family members based upon your Social Security benefit eligibility;

- Mandatory "no fault" automobile insurance work-loss payments; and

- Benefits for which you are eligible under Workers' Compensation, occupational disease or other employer liability plan or plans.

---

**Example**

This example assumes:

- Your monthly base pay is $2,500 when you become totally disabled.
- You are eligible for a Social Security disability benefit of $700 per month.
- You have no other income that would reduce your Long Term Disability Plan maximum benefit.

If you are covered under Option 2 at 60%, your long term disability benefit is determined as follows:

| | | |
|---|---|---|
| 60% of $2,500 | $1,500 | maximum monthly disability income |
| Less Social Security benefit | - 700 | Social Security benefit |
| | $ 800 | Long Term Disability Plan payment |

The Long Term Disability Plan payment of $800 per month is subject to applicable taxes.

---

Your Long Term Disability Plan maximum benefit is reduced by the amount of the Social Security benefit for which you and your dependents are eligible when your disability benefit begins. During the period you receive Long Term Disability Plan benefits, your Plan benefit is adjusted to reflect increases or decreases in the Social Security benefits you receive.

If the Claims Administrator has not received documentation that substantiates your application for Social Security Disability benefits within 30 days of when your Long Term Disability Plan benefits start, the Claims Administrator will use an estimate to reduce your Plan benefit.

## Minimum Monthly Long Term Disability Benefit

The Plan pays a minimum monthly long term disability benefit regardless of the income you receive from other sources. The minimum benefit is determined by the Plan option in effect on the date your disability begins.

| Plan Option In Effect When Disability Begins | Minimum Monthly Payment |
|---|---|
| Option 1 | $50 |
| Option 2 | $60 |
| Option 3 | $70 |

The minimum benefit may be used to recover long term disability benefits paid to you under the provisions of the "Rights of Restitution and Reimbursement and Subrogation" section.

## WHEN PAYMENTS BEGIN AND HOW LONG THEY CONTINUE

Long term disability benefit payments begin on the day immediately following a six-month period during which you have been absent from work due to a covered disability. You must submit a claim to be considered for benefits (see "How to Obtain Benefits — Claims for Long Term Disability Benefits").

Once your long term disability benefit payments start, they continue throughout your disability period until your recovery date or until the date shown in the chart below (subject to continuation of the Plan).

| Your Age When Disability Begins | Date Long Term Disability Benefits End |
|---|---|
| 60 or younger | Your 65th birthday |
| 61 through 69 | After 5 years or your 70th birthday, whichever comes first |
| 70 or older | After 1 year |

After you are first approved, you must periodically submit updated medical information regarding your continuing disability. See "How to Obtain Benefits — Medical Information" and "How to Obtain Benefits — Requirement to Update Medical Information" for more information.

### Successive Periods of Disability

The waiting period for the start of LTD benefits begins on the day you become disabled and continues for six months. During that time, you may be eligible for benefits under a Company short term disability program.

**If you return to work before LTD benefit payments begin.** If you return to work for three months or less during the six-month LTD waiting period and you become disabled again, you do not have to start over to satisfy a new six-month waiting period. The days you were out on leave will count toward the six-month waiting period, but the days you were back at work will not. For this to be the case, your second period of disability must be from the same cause or a cause related to the first disability.

The waiting period is handled differently if you return to work for longer than three months or you experience a disability from a second, unrelated cause. In that case, you are considered to have a new disability. The six-month waiting period starts again with the new disability.

**After LTD Benefits Payments Have Begun.** If you return to work after receiving LTD benefits and you become disabled again — within three months following your return — the second period of disability is considered a continuation of the first. Long term disability benefits become payable as of the first day of your subsequent covered disability. For this to apply, your second period of disability must be from the same cause or a cause related to the first disability.

Benefits are handled differently if you return to work for longer than three months or you experience a disability from a second, unrelated cause. In that case, you are considered to have a second disability. The six-month waiting period starts again with the new disability.

## When Long Term Disability Benefits End

If you have a covered disability and are receiving long term disability benefits, your benefits end when the earliest of the following events occurs:

- You no longer have a covered disability under the Plan, as determined by the Claims Administrator;

- The Company, at its sole discretion, offers you — at your pre-disability base pay — employment that accommodates any medical restrictions your health care practitioner orders;

- The first day for which you are unable to provide satisfactory evidence of a covered disability;

- You do not follow the treatment plan ordered by your health care practitioner;

- You fail to cooperate with a scheduled independent medical examination (IME) or functional capacity evaluation (FCE);

- You begin work for wage or profit with any employer or through self-employment, unless the work is rehabilitative employment (see below) approved by the Claims Administrator;

- The applicable period of benefit payments ends based on your age (see chart on page 140);

- You complete the vocational rehabilitation program developed for you, or you decline to participate in the program or fail to complete it;

- You are incarcerated;

- You die; or

- The Plan terminates.

You cannot substitute holiday pay or vacation pay for payment of disability benefits.

## Modified Duty Employment

While you are receiving disability benefits, it may be determined that you could return to work in your regular job if your duties were modified to accommodate your current health limitations. Such a determination is made by your health care provider or a health care provider selected by the Company or Claims Administrator. The Claims Administrator will work with you and your work location to determine if the suggested modifications can be reasonably accommodated. Your benefits end if you do not accept modified duty employment that has been designed for you.

In modified duty employment, you work at your regular job with either restrictions on the work you do or a reduction in the number of hours you work. The Company does not create positions for the purpose of modified duty employment. Any permanent job restrictions are analyzed in accordance with the Americans with Disabilities Act.

You receive your regular pay while working in modified duty employment. Modified duty employment may last up to 90 days. After 90 days, you must return to your regular job, go back on disability or receive an extension that has been approved by the Claims Administrator, Plan Administrator and Company.

## Rehabilitative Employment During Disability

If you are eligible to receive LTD benefits but believe that you may be able to return to active work either with another employer or in a self-employed arrangement, you may request approval for a rehabilitative employment period.

If approved, you will be eligible for long term disability benefits for up to a three-month period of rehabilitative employment. The LTD benefit you would otherwise receive is reduced by 50% of the gross income you earn from rehabilitative employment.

You may request additional three-month periods of rehabilitative employment, up to a maximum period of 24 months for any one disability.

Contact the Claims Administrator for an application and additional information.

**Vocational Rehabilitation**

If you become eligible to receive long term disability benefits under the Plan, the Claims Administrator will evaluate your potential job skills and physical capacity for a vocational rehabilitation program. If the Claims Administrator determines retraining will prepare you to hold a job, in a similar or another occupation, a vocational rehabilitation program may be developed for you.

A vocational rehabilitation program means any reemployment program selected by the Claims Administrator, in its sole discretion, as appropriate for the claimant. This may include vocational or placement counseling, skills training, placement assistance or vocational training.

Long term disability benefits will end if you refuse to participate in a program that the Claims Administrator has identified as appropriate for you. Payment of expenses, for the vocational rehabilitation program, will be mutually agreed upon by the Plan and participant.

## HOW TO OBTAIN BENEFITS

**Claims for Long Term Disability Benefits**

You are required to complete and submit certain forms to receive Long Term Disability Plan benefits.

If you are receiving disability benefits from the Short Term Disability Plan, the Claims Administrator will mail the Long Term Disability Plan forms to you at the end of your fourth month of disability.

You must complete the forms and return them to the Claims Administrator within 30 days of when you receive them.

**Filing Deadline**

The forms to receive benefits from the Long Term Disability Plan must be completed and returned to the Claims Administrator within one year of your last day of active work with the Company. If you do not meet this filing deadline, you will not be eligible to receive long term disability benefits.

**Deadline for Responding to Requests for Information**

In addition to the standard forms, the Claims Administrator may require additional medical or other information to evaluate your claim. If the Claims Administrator requests additional information, you must respond within 30 days of the initial request. If you do not respond by this deadline, your claim will be denied. It is your responsibility to see that your health care practitioner submits any requested medical information within this 30-day period.

**Claims for Other Disability Benefits**

Remember that the maximum long term disability benefit is reduced by the amount of benefits you are eligible to receive from other sources.

You must apply for Social Security Disability benefits as soon as the Claims Administrator determines you are eligible for them. The Claims Administrator will assign your case to a Social Security advocacy group that will work with you to get the benefits you and your dependents may be entitled to because of your disability. If you fail to participate in this advocacy process, your LTD benefits will be reduced by an estimate of the expected Social Security award until the Claims Administrator receives documentation of your Social Security application.

If your initial application for Social Security Disability benefits is denied, the Plan requires you to reapply. In the event Social Security Disability benefits are denied upon re-application, the Plan requires you to appeal the denial before an Administrative Law Judge. If the Administrative Law Judge denies your application, your disability benefits will be reinstated retroactively.

If a determination of your Social Security Disability benefit has not yet been made within the first 30 days of the start of your Long Term Disability Plan benefits, the Claims Administrator will reduce your Plan benefit using an estimated Social Security amount.

## How Payments Are Made

Long term disability benefits are paid monthly. Benefits are prorated for any period of disability lasting less than a month.

If amounts from another source for which the Plan reduces benefits are paid to you in a lump sum, the Claims Administrator considers those benefits as if they were paid in monthly installments — prorated over the period the lump sum was intended to cover.

## Medical Information

Objective findings of a disability are necessary to substantiate the period of time your health care practitioner indicates you are disabled. Objective findings are those that can be observed by your health care practitioner through objective means, not from your description of the symptoms. Objective findings include:

- Physical examination findings (functional impairments/capacity);
- Diagnostic test results/imaging studies;
- Diagnoses;
- X-ray results;
- Observation of anatomical, physiological or psychological abnormalities; and
- Medications and/or treatment plan.

## Requirement to Update Medical Information

If your claim is approved by the Claims Administrator, your health care practitioner will periodically be requested to submit updated medical information regarding your continuing disability. Payments will end if information required to revalidate your claim is not received within 30 days of the initial request. You are responsible for the expense involved in obtaining updated medical information regarding your disability.

The Claims Administrator may require you, from time to time, to undergo an independent medical examination (IME) and/or a functional capacity evaluation (FCE). If you do not cooperate with this request (for example, you fail to keep a scheduled appointment), your benefits will end. If the Claims Administrator requests that you undergo an independent medical examination and/or a functional capacity test, the examination is made at the Company's expense.

# PLAN ADMINISTRATION

**COORDINATION OF BENEFITS** ......................................................................................... **145**
    Which Plan Pays First.........................................................................................................145
    How COB Works for Medical (Including Medicare), Dental and Vision Expenses ...............146
    Coordination of Benefits Examples ...................................................................................147

**CLAIMS APPEAL PROCEDURE** ....................................................................................... **148**
    Claims and Claims Filing — General Overview and Explanations ......................................148
    Claim Denials or Adverse Benefit Determinations ...........................................................149

**FILING AND APPEALING CLAIMS** ................................................................................... **149**
    Step 1: You File a Claim with the applicable Claims Administrator ...................................149
    Step 2: Claims Administrator Makes an Initial Decision on Your Claim .............................149
    Step 3: You Appeal a Denial of Your Initial Claim — First-Level Appeal ...........................151
    Step 4: Claims Administrator Reviews Your Appeal and Makes a Decision .........................152
    Step 5: Your Options if Your First-Level Appeal Is Denied ...............................................153
    Step 6: Second Level of Appeal for Claims.......................................................................153
    Step 7: External Review Process.......................................................................................154
    Step 8: You File Suit in Federal Court...............................................................................155

**RECOVERY OF BENEFITS** ............................................................................................... **156**

**RIGHTS OF RESTITUTION AND REIMBURSEMENT AND SUBROGATION** ................................ **157**

**ACCESS TO RECORDS** ..................................................................................................... **157**

**ADMINISTRATION AND OTHER INFORMATION**.................................................................. **158**
    Plan Name, Type, Funding and Number...........................................................................158
    Plan Administrator ...........................................................................................................160
    Employer and Plan Sponsor .............................................................................................160
    Employer Number............................................................................................................160
    Agent for Service of Legal Process....................................................................................161
    Type of Administration ....................................................................................................161
    No Contract of Employment.............................................................................................161
    Non-Assignment of Rights ...............................................................................................162
    Plan Amendment and Termination ..................................................................................162
    Claims Administrators and Suppliers ...............................................................................162
    Other Third Party Administrators .....................................................................................164
    Plan Year .........................................................................................................................164
    Alternate Payee Provision.................................................................................................164
    Reliance on Documents and Information ..........................................................................165
    No Waiver ........................................................................................................................165
    Physician/Patient Relationship.........................................................................................165
    Intention of the Dental Plan to Be Grandfathered ...........................................................165

**USE AND DISCLOSURE OF PROTECTED HEALTH INFORMATION UNDER HIPAA** ................... **165**

**STATEMENT OF ERISA RIGHTS**........................................................................................ **166**
    Receive Information About Your Plan and Benefits ..........................................................166
    Continue Group Health Plan Coverage.............................................................................166
    Prudent Actions by Plan Fiduciaries .................................................................................166
    Enforce Your Rights.........................................................................................................167
    Assistance with Your Questions .......................................................................................167

**ERISA RIGHTS DO NOT APPLY TO CERTAIN PROGRAMS**.................................................... **168**

**PLAN INTERPRETATION** ................................................................................................... **168**

**COLLECTIVE BARGAINING AGREEMENT**............................................................................ **168**

## COORDINATION OF BENEFITS

Eaton uses a coordination of benefits (COB) process to determine benefit payments from the Medical, Dental and Vision Plans. COB applies when benefits for the same expenses for you or any of your covered dependent are payable from another group health plan. Other group health plans include government plans, employer-sponsored plans and HMOs.

COB helps to avoid double payments and control costs.

### Which Plan Pays First

When expenses are eligible for coverage from more than one plan, the plan identified as the primary plan pays benefits first, based on its plan rules. Then the secondary plan determines what it will pay, if anything. This section explains how the plans decide which plan is primary.

**For Employees.**

| If ... | Primary Plan | Secondary Plan |
|---|---|---|
| You are covered by more than one group health plan | The plan that covers the patient as an active employee | The plan that covers the patient as a dependent |
| | The plan that covers the patient as an active employee | The plan that covers the patient as a retiree |
| | The plan that covers the patient as a retiree | The plan that covers the patient as a dependent |
| You are an active Eaton employee and you have a second job that provides coverage | Your other employer's plan | The Eaton Plan |
| The other group health plan does not have a COB clause | The other group health plan | The Eaton Plan |
| The other plan is motor vehicle liability or uninsured/ underinsured coverage | The motor vehicle liability or uninsured/underinsured coverage | The other plan |

**For Dependent Children Covered by Both Parents' Plans.**

| If ... | Primary Plan | Secondary Plan |
|---|---|---|
| The parents are not divorced or legally separated | The plan of the parent whose birthday comes first in the calendar year* | Other parent's plan |
| The parents are divorced or legally separated | Plan of the parent who has legal custody | Other parent's plan |
| A parent who has legal custody remarries | Plan of the parent with legal custody | The plan of the stepparent is secondary. The plan of the natural parent without custody pays third. |
| A parent is assigned financial responsibility for a child's medical care expenses | Plan covering that parent (For a stepchild, the divorce decree determines the primary plan.) | The other parent's plan |

*For example, if your birthday is May 1 and your spouse's birthday is December 5, your medical plan pays first. The year of each parent's birth is not a factor. If both parents have the same birthday, the plan of the parent who has been covered the longest pays first.*

**Eaton Medical Plan and Medicare.** In most cases, the Eaton Medical Plan is the primary plan when a person is covered in the Plan and also eligible for Medicare. The Eaton Plan pays benefits first and Medicare is the secondary payer when:

- You or a dependent is covered by the Eaton Medical Plan and also eligible for Medicare.

- You are an active employee age 65 or older. You can choose to have Medicare be the primary payer, but your Eaton Medical Plan coverage will end.

- During the first 30 months the person covered by the Eaton Medical Plan qualifies for Medicare because of end stage renal disease (ESRD).

- You cover your domestic partner under the Eaton Medical Plan and he or she is Medicare-eligible because of disability or during the first 30 months of ESRD.

The Federal Secondary Medicare Payer Program identifies Medicare as the primary payer:

- After the person covered under the Eaton Medical Plan has qualified for ESRD for 30 months. The 30-month period starts on the earlier of the month in which the covered person:
  - begins a regular course of renal dialysis, or
  - receives a kidney transplant without first beginning dialysis.

- You cover your domestic partner under the Eaton Medical Plan and he or she qualifies for Medicare based on age (unless he or she has coverage through his or her own employer).

When Medicare is the primary payer and the covered person enrolls in Medicare Advantage, the Eaton Plan stops paying benefits for him or her. To avoid paying for Eaton Plan coverage, you must waive coverage through the Eaton Service Center at Fidelity. If you later reenroll in Medicare Parts A and B, you can start your Eaton Plan coverage again by contacting the Eaton Service Center at Fidelity within 31 days of the date Medicare Parts A and B become effective.

**Other COB Rules.** If the COB procedures described above fail to determine which plan is primary, then the plan covering the patient for the longest period of time pays first. However, if a plan covers a person as the dependent of a retired employee, the benefits of that plan are secondary to a plan that covers the person as the dependent of an active employee. (If the other plan does not have this provision, this exception does not apply to that plan.)

Regardless of any COB provisions, the plan does not cover a dependent unless he or she meets the requirements under "Eligibility for Your Dependents."

## How COB Works for Medical (Including Medicare), Dental and Vision Expenses

When the Eaton Medical, Dental or Vision Plan is primary, the Plan calculates and pays benefits as if there is no other plan.

When the Eaton Plan pays second, the Claims Administrator determines the benefits the Eaton Plan will pay as follows.

Step 1:  The Claims Administrator calculates your benefit as if the Eaton Plan paid first.

Step 2:  The Claims Administrator compares that amount to the primary plan's benefit.

Step 3:  If the Eaton Plan would have paid a bigger benefit than the primary plan, the Eaton Plan makes a payment toward the remaining eligible expenses. The amount the Eaton Plan pays is the difference between what it would have paid and what the primary plan already paid. The payment is made subject to all Plan provisions, and the total paid will not be more than what the Eaton Plan would have paid if it paid first.

If the Eaton Plan would have paid the same or a smaller benefit than the primary plan, you receive no benefit from the Eaton Plan.

This same process applies when Medicare is the primary payer and the Eaton Medical Plan is secondary. Eaton Plan benefits are reduced to reflect the Medicare Parts A and B benefits payable — whether or not the covered person is enrolled. If Medicare is your primary plan, make sure to enclose the Explanation of Medicare Benefits (EOMB) when you submit expenses to the Health Plan Claims Administrator for payment.

## Coordination of Benefits Examples

**Medical Example.** Assume a primary care physician office visit. The charges are:

| | |
|---|---|
| Office visit charge | $65 |
| Health Plan Claims Administrator's negotiated network charge (participating physician) | $55 |
| Maximum allowed amount | $60 |

| Consumer Health 80 Plan Option — Eaton Plan Is Secondary Primary Plan Paid $43 | | | | |
|---|---|---|---|---|
| **In-Network** | | | **Out-of-Network** | |
| $55 | Negotiated network charge | | $60 | Eligible charge (maximum allowed amount) |
| x  80% | Plan coinsurance | | x   60% | Plan coinsurance |
| $44 | Eaton Plan payment if primary | | $36 | Eaton Plan payment if primary |
| - $43 | Paid by primary plan | | - $43 | Paid by primary plan |
| $ 1 | Benefit payable by Eaton Plan | | $ 0 | Benefit payable by Eaton Plan |

*Note: Example assumes the annual deductible has been met. The out-of-pocket payment applies to the annual out-of-pocket maximum. When the Eaton Plan is secondary, participating providers are not obligated to honor the negotiated network charge.*

**Dental Example.** Assume a covered dental expense of $250 for a crown restoration. The annual deductible has already been met.

| Eaton Plan Is Primary | | | |
|---|---|---|---|
| Dentist's Charge | $250 | Reasonable & customary expense | |
| | x 50% | Plan coinsurance | |
| | $125 | Benefit paid by Eaton Plan | |
| **Employee/Patient Responsibility** | **$125** | ($250 less $125) | |
| Eaton Plan Is Secondary | | | |
| Dentist's Charge | $250 | Reasonable & customary expense | |
| | $100 | Primary plan payment | |
| | | Eaton Plan as secondary pays $25 | |
| | | ($25 is the difference between the Eaton Plan as primary [benefit of $125 available] and payment made by primary plan when Eaton is secondary) | |
| | $100 | From the primary plan | |
| | + 25 | From the Eaton Plan, as secondary | |
| | $125 | Total from both plans | |
| **Employee/Patient Responsibility** | **$125** | ($250 less $125) | |
| **Plan Administration** | **$25** | Applied Toward Annual Maximum | |

## CLAIMS APPEAL PROCEDURE

If you disagree with the Claims Administrator's decision on a claim you submitted, the Plan provides a claims appeal process. You must complete the appropriate steps in the process — that is, you must exhaust your administrative remedies — before you can file suit in state or federal court.

This section of the SPD describes the Plan's claims appeal procedure in detail. Note that at each point in the claims process, you will receive the relevant information about your right to appeal a decision.

The Claims Administrators are listed under "Administration and Other Information — Claims Administrator and Service Providers." The addresses for filing claims with the applicable Claims Administrator are also listed.

### Claims and Claims Filing — General Overview and Explanations

A claim is a request for benefits for items or services that is made by or on behalf of a Plan participant to the Claims Administrator. Claims must be filed according to the Plan's procedure for the applicable benefit claims.

The group health plans distinguish among four types of claims:

- **Urgent care claims** are claims on which a decision must be made as soon as possible, taking into account the medical exigencies, but not later than 72 hours after the claim is filed. The 72-hour period applies because a longer time period for processing:

  - could seriously jeopardize your life, health or ability to regain maximum function; or

  - in the opinion of a physician with knowledge of your medical condition, would subject you to severe pain that can be adequately managed only with the care or treatment requested in the claim.

- **Concurrent care decisions** relate to treatment provided on an ongoing basis over a period of time or approved for a specified number of treatments. A request to extend the course of treatment beyond the approved time period or number of treatments requires a concurrent care decision by the Claims Administrator. Benefits for an ongoing course of treatment cannot be reduced or terminated without providing advance notice and an opportunity for advance review.

- **Pre-service claims** are claims for treatments or services that require pre-authorization as a precondition for payment of benefits or for payment of the largest benefit available. Pre-service claims differ from urgent care claims because an emergency situation does not exist.

- **Post-service claims** are claims for care that you have already received. These claims involve only the decision to approve payment to the provider or reimburse you for the cost of the services. An example of a post-service claim is paying the full price for a prescription drug at a retail pharmacy and then requesting reimbursement from the Plan. All welfare plan claims are considered to fall in this category as follows: the Dental/Vision Reimbursement Account Plan, Dependent Care Reimbursement Account Plan, Work/Life Solutions Plan, Adoption Benefits Plan, Disability Plan and Employee Life Insurance Plan.

You must file all claims in writing — except urgent care claims, which can be filed over the telephone. Your claim is considered to be filed on the date the Claims Administrator receives it.

You may authorize a personal representative to act on your behalf in the claim filing and appeal process by completing and signing the form specified by the Claims Administrator. For an urgent care claim, a health care professional with knowledge of your health condition is permitted to act as your authorized representative until you are able to make a written authorization.

You or your dependent for whom a claim is filed may be referred to as a claimant in some correspondence. For purposes of this claims procedure section, use of the word "you" means the "claimant."

**Claim Denials or Adverse Benefit Determinations**

The terms "claims denial," "denied claim" and "adverse benefit determination" are interchangeable and refer to a claim for Plan benefits that is:

- Denied,
- Reduced,
- Terminated, or
- Fails to provide or make payment in whole or in part for the service or treatment requested.

A rescission of coverage under the group health plans is also considered an adverse benefit determination. An adverse benefit determination may be based on any of the following reasons:

- A determination that you are not eligible to participate in the Plan,
- The application of utilization review,
- A determination that the item or service requested is experimental or investigational, or
- A determination that the item or service requested is not medically necessary or not appropriate.

Claim denials are made in writing and can be appealed. The claim denial that you receive from the Claims Administrator will explain the next step in the appeals process.

## FILING AND APPEALING CLAIMS

There are several steps in the claims filing and appeal process. You must complete the applicable steps for your type of claim as outlined here to exhaust your administrative procedures.

### Step 1: You File a Claim with the applicable Claims Administrator

You can find the process for filing a claim for services toward the back of each benefit section of this booklet.

### Step 2: Claims Administrator Makes an Initial Decision on Your Claim

After reviewing your claim, the Claims Administrator sends you an explanation of benefits (EOB) showing what the Plan will pay for the services requested in the claim and/or information about the claim, such as if it is incomplete.

**Required Time Frames.** If you filed your claim properly, the type of claim you filed determines the amount of time the Claims Administrator has to make an initial decision on your claim. A decision as to whether your claim is accepted or denied is made as soon as possible but at least within the times shown here:

| Time Frames for Initial Decision on Your Claim | | |
|---|---|---|
| **Type of Claim** | **Initial Decision** | **Extension** (see Extensions for Claims on the next page) |
| Urgent care claim and urgent concurrent care decision | 72 hours (24 hours for urgent dental concurrent care if the claim is made at least 24 hours before the expiration of the prescribed period or number of treatments) | NA |
| Concurrent care decision (not urgent), pre-service (not urgent) and dental non urgent care claims | 15 days | 15 days |
| Post-service for medical, dental and vision; DVRA (Dental/Vision Reimbursement Account) claims | 30 days | 15 days for medical, prescription drug, DVRA |

| Time Frames for Initial Decision on Your Claim | | |
|---|---|---|
| Disability claim | 45 days | 30 days; additional 30 day extension for Long Term Disability Plan |
| Work/Life Solutions Plan and Adoption Benefits Plan | 60 days | NA |
| Dependent Care Reimbursement Account (DCRA), Life and AD&D Plan claims | 90 days | 60 days DCRA; 90 days Life and AD&D Plan |

These timeframes do not determine the date the claim is paid.

**Incomplete or Improperly Filed Urgent Care or Pre-Service Claims.** The Claims Administrator will notify you within 24 hours of when they receive your urgent care claim if you did not:

- Follow the Plan's procedures for filing an initial urgent care claim, or

- Provide enough information in your claim for the Claims Administrator to determine whether, or to what extent, benefits are covered or payable under the Plan.

Unless you request it in writing, this notice may be provided orally and will explain the proper procedures to follow and/or the specific information needed. If specific information is required, you will be given a reasonable amount of time (taking into account the medical circumstances, but at least 48 hours) to provide it.

For an urgent care claim, the Claims Administrator will notify you of the benefit determination within 48 hours of whichever of the following is earlier:

- The date the Claims Administrator receives the specified information, or

- The end of the period in which you had to supply the information.

The same procedures apply for a pre-service claim as for an urgent care claim, except that the Claims Administrator has five days to notify you that the pre-service claim was filed improperly or did not contain complete information.

**Extensions for Claims.** The Claims Administrator may extend the time for its response to your initial claim by up to the days specified in the chart above under "Extension" for matters beyond its control, including an incomplete claim. You must be notified in writing of the extension before the initial decision period ends (15, 30, 45 or 90 days respectively), including the reasons for the extension and a description of any additional information you need to supply to complete your claim.

You have 45 days (30 days for the Disability Plan) from the date the Claims Administrator sends the notification to supply the specified information. Once you provide the additional information, the Claims Administrator will notify you of the benefit determination on your initial claim within 15 days of the earlier of:

- The date the Claims Administrator receives the specified information, or

- The end of the period in which you had to supply the information.

The Plan may secure independent medical or other advice and require other evidence it deems necessary to decide your claim.

For the LTD Plan, if the Claims Administrator determines that, because of reasons beyond the control of the Claims Administrator, a decision cannot be reached within the 30-day extension period, the determination period may be extended for up to an additional 30 days. The Claims Administrator must notify you before the end of the first 30-day extension period, telling you the reason for the extension and the expected decision date.

**Decision on Your Claim.** If your initial claim is denied, in whole or in part, you will receive a written notice that contains the information listed in the "Required Content of Adverse Benefit Determination Notifications" box on page 151. This may come in the form of an EOB.

*Please note that an EOB form usually meets the legal definition of a claim denial because deductibles, coinsurance and other cost-sharing charges that are normally your responsibility to pay mean that the Plan does not cover the claim at 100%. As a result, even though the percentage of the charge you must pay is defined by the Plan's cost-sharing features, the EOB will include information about your right to appeal.*

---

**Required Content of Adverse Benefit Determination Notifications**

The Claims Administrator will send you a written or electronic notification of adverse benefits determination that includes the following:

- Information sufficient to identify the claim involved (including the date of service, the health care provider, the claim amount (if applicable), and a statement describing the availability upon request of the diagnosis code and its corresponding meaning, and the treatment code and its corresponding meaning).

- The specific reason or reasons for the denial (including the denial code and its corresponding meaning as well as a description of any standard that was used in denying the claim).

- Reference to the specific Plan provisions on which the determination is based.

- A description of any additional material or information necessary for you to perfect the claim and an explanation of why such material or information is necessary.

- A description of the Plan's internal appeals and external review procedures and the time limits applicable to these procedures, including a statement of your right to bring a civil action under section 502(a) of ERISA following an adverse benefit determination on final review by the Claims Administrator.

- If an internal rule, guideline, protocol or other similar criterion ("internal rule") was relied on in making the adverse determination, either the internal rule itself or a statement that such an internal rule was relied on in making the adverse benefit determination and that a copy of that internal rule will be provided to you free of charge upon request.

- If an adverse benefit determination is based on a medical necessity, experimental treatment or similar exclusion or limit, the notification will inform you that an explanation of the scientific or clinical judgment for the determination will be provided free of charge upon request.

- For health care claims, the availability of, and contact information for, any applicable office of health insurance consumer assistance or ombudsman who may assist you with the internal claims appeals and external review processes.

- For urgent care claims, a description of the expedited review process applicable to such claims.

If your appeal of a claim is denied, the notification of denial will also include, if applicable:

- A statement describing any additional mandatory or voluntary appeal procedures offered by the Plan, including the opportunity for you to request an external review by an independent review organization.

- A statement that "You and your Plan may have other voluntary dispute resolution options such as mediation. One way to find out what may be available is to contact your local U.S. Department of Labor Office and your state insurance regulatory agency."

- An explanation of your right to request reasonable access to and copies of all documents, records and other information relevant to your claim without charge.

- In the case of a second level appeal denial, the description of the Plan's standard, if any, used in denying the claim must include a discussion of the decision.

---

**Step 3: You Appeal a Denial of Your Initial Claim — First-Level Appeal**

If you do not agree with the Claims Administrator's determination, you have 180 days (60 days for Life and AD&D Plan) from the date you receive the written denial of your initial claim to appeal the decision. Your claim appeal must be in writing and filed with the Claims Administrator at the address listed in the materials they send you (see box above). If you do not appeal within 180 days (60 days for Life and AD&D Plan), you lose your right to appeal the denial, and because you failed to exhaust your internal administrative appeal rights, you lose your right to file suit in court.

For the Disability Plan, you must file your appeal of the initial claim denial within 30 days of receipt of the written notification to avoid termination of your employment.

**Step 4: Claims Administrator Reviews Your Appeal and Makes a Decision**

When you appeal a claim denial, the Claims Administrator reviews your claim again and makes a decision based on all comments, documents, records and other information you have submitted.

The following rules apply in group health plan review of a claim appeal:

- For health care benefits, someone other than the original reviewer and who does not report to the original reviewer reviews the claim decision.

- If the denial was based, in whole or in part, on a medical judgment, the reviewer will consult with a health care professional who has appropriate training and experience in the medical field involved. The health care professional cannot be the same person who made the original denial decision nor someone who reports to that person.

- The identity of medical or vocational experts who were consulted in the initial claim denial must be disclosed to you regardless of whether their advice was relied on in making the claim determination.

- *For an urgent care claim,* the review process is expedited and you can submit your request for a review orally or in writing. Necessary information may be transmitted between you and the Plan by phone, fax or any other similarly expeditious method.

- The review of the appeal cannot defer to the initial denial of your claim; that is, the review must stand on its own and not use the previous decision to support the decision on appeal.

The Claims Administrator will send you, at no extra charge, any new or additional evidence or rationale that is considered, relied on or generated in connection with your appeal of the claim. This information must be provided to you as soon as possible so you have a reasonable amount of time to respond before the date of the final determination of the claim.

**Required Time Frames.** Based on the type of claim, the Claims Administrator must review your appeal within a reasonable amount of time but at least within the periods shown here:

| Time Frames for Decision on Your Appeal of a Denied Claim | | |
|---|---|---|
| **Type of Claim** | **First Level Appeal Decision** | **Extension** |
| Urgent care claim and urgent concurrent care decision | 72 hours | NA |
| Concurrent care decision (not urgent) for prescription drug and dental claims; pre-service claim (not urgent) for prescription drug; and dental non urgent care claims | 15 days | NA |
| Pre-service claim (not urgent) and concurrent care decision (not urgent) for medical; post-service claim for dental and vision; and Dental/Vision Reimbursement Account (DVRA) claims | 30 days | 15 days for vision<br>No extension available for dental and DVRA |
| Disability claim | 45 days | 45 days |
| Post-service claim for medical, Dependent Care Reimbursement Account, Work/Life Solutions Plan, Adoption Benefits Plan, Life and AD&D Plan claims | 60 days | 60 days<br>No extension available for Medical, Work/Life Solutions Plan and Adoption Benefits Plan |

If your claim appeal is denied, in whole or in part, the Claims Administrator will send you a written notice that contains the information listed in the "Required Contents of Adverse Benefit Determination Notifications" box on page 151.

**Extensions.** The Claims Administrator may extend the time for its response to your first level appeal claim by up to the days specified in the chart above for matters beyond its control, including an incomplete claim. You must be notified in writing of the extension before the appeal decision period ends, including the reasons for the extension and a description of any additional information you need to supply to complete your claim.

### Step 5: Your Options if Your First-Level Appeal Is Denied

If the Claims Administrator denies your claim after a first-level appeal for Dependent Care Reimbursement Account and Work/Life Solutions Plan claims, you may file suit in court (see Step 8). For all other benefits, if the Claims Administrator denies your claim after a first-level appeal, you have these options available to you:

- For medical claims:
  - file a voluntary second-level appeal with the Health Plan Administrator (see Step 6),
  - in certain circumstances, you may request an external review by an independent review organization (may be done at the same time as filing for a voluntary appeal) (see Step 7), or
  - file suit in court (see Step 8).
- For prescription drug claims:
  - urgent care claims, request an expedited external review by an independent review organization (see Step 7) or file suit in court (see Step 8).
  - non-urgent drug claims, you must file a second-level appeal with the Health Plan Claims Administrator (see Step 6).
- For dental claims:
  - urgent care claims, request a voluntary second-level appeal with the Plan Administrator (see Step 6).
  - all other dental claims, you must file a second-level appeal with the Plan Administrator (see Step 6).
- For vision, DVRA and Disability Plan claims, you must file a second-level appeal with the Plan Administrator (see Step 6).
- For Life and AD&D claims, file suit in court (see Step 8).

### Step 6: Second Level of Appeal for Claims.

**Mandatory Second-Level Appeal.** If the Claims Administrator denies your claim for prescription drug, non-urgent care dental, vision, DVRA, disability and life benefits in your first-level appeal and you do not agree with the determination, you must appeal the decision (file a second-level appeal) with the Claims or Plan Administrator for a final determination as follows:

- For prescription drug non-urgent drug claims, you must file a second-level appeal with the Health Plan Claims Administrator within 90 days from the date you receive the written denial
- For all dental except urgent care claims: you must file a second-level appeal with the Plan Administrator within 60 days from the date you receive the written denial
- For vision claims, you must file a second-level appeal with the Plan Administrator within 60 days from the date you receive the written denial
- For DVRA claims, you must file a second-level appeal with the Plan Administrator within 30 days from the date you receive the written denial
- For Disability Plan claims, you must file a second-level appeal with the Plan Administrator within 180 days from the date you receive the written denial

If you do not appeal within the times specified above, you lose your right to appeal the denial, and you lose your right to file suit in court because you failed to exhaust your internal administrative appeal rights.

In reviewing the denial of your appeal, the Administrator must comply with the same standards in Step 4. A decision will be made within 15 days (30 days for post-service dental, vision and DVRA claims, 45 days for Disability Plan claims (with possible extension of 45 days),of when the Administrator receives your appeal. You will be notified in writing of the decision on your appeal. If your claim is denied, you may file a suit in federal court (see Step 8) or in certain circumstances, you may request an external review (see Step 7).

**Voluntary Second-Level Appeal for Medical and urgent care Dental Claims.** If the Claims Administrator denies your medical claim appeal and you do not agree with the determination, you may file a voluntary appeal with the Plan Administrator. Your appeal must be in writing and filed with the Plan Administrator at the address listed under "<u>Administration and Other Information — Plan Administrator</u>" within 45 days for medical claim and 60 days for dental Plan claim of receiving the Claims Administrator's determination of your first appeal.

At the same time as you file the voluntary appeal, you may file a suit in federal court (see Step 8) or, in certain circumstances for a medical claim, you may request an external review (see Step 7). The Plan Administrator will not assert a failure to exhaust administrative remedies if you elect to pursue a claim in court after the first-level appeal, rather than through the voluntary level of appeal or external review process. The running of any statute of limitations applicable to pursuing your claim in court will be suspended during the period of the voluntary appeal process.

Your decision on whether to pursue a voluntary appeal with the Plan Administrator has no effect on your right to any other benefits under the Plan.

The Plan Administrator has 30 days (with the option to extend by an additional 30 days) for the Medical Plan or 10 days for the Dental Plan to review your voluntary appeal and make a decision. Because the appeal is voluntary, you do not have to complete this step. You may file a suit in federal court (see Step 8) or in certain circumstances, you may request an external review for medical claims (see Step 7) at the same time as requesting a voluntary appeal.

**Step 7: External Review Process**

You may request an external review by an Independent Review Organization (IRO) when you receive a denial of:

- Your initial urgent care claim,

- Your first-level appeal of a non-urgent medical claim, or

- Your second-level appeal of a non-urgent prescription drug claim.

Your claim is eligible for external review if:

- You are or were covered under the Plan when the health care item or service was requested or provided;

- The claim or appeal denial was based on medical judgment or was a rescission of coverage;

- You have exhausted all of the Plan's claims and appeal processes up to the external review process if it is a non-urgent care claim; and

- You have provided all information and forms required to process the external review.

Your request for an external review must be in writing and filed with the Claims Administrator within four months of receiving your claim denial. Although it is not required, you may include issues, comments, documents, records and other information relating to your claim that you want considered in the external review.

**Standard (non-expedited) External Review.** Within five days of receiving your request, the Claims Administrator must determine if your claim appeal is eligible for an external review. The Claims Administrator will notify you in writing within one day of the decision on your claim's eligibility for an external review.

If your request is complete but not eligible for an external review, the notice will include the reasons your request is ineligible and contact information for the Employee Benefits Security Administration. If your request is incomplete, the notice will describe the information needed to complete the request. You will have until the later of the end of the four-month period you had to file the request for an external review or the 48-hour period after you receive the notice to provide the missing information.

The Claims Administrator assigns eligible claims to an independent review organization (IRO). The IRO notifies you when the review process is beginning, and you will have 10 business days following receipt of the notice to provide the IRO with additional information to consider in your appeal.

The IRO will provide written notice of the final external review decision within 45 days after it receives your request for external review.

The IRO will not defer to the decisions made during the internal appeal process and will consider all the information and documents that it receives in a timely manner when making its decision.

**Expedited External Review.** You may request an expedited external review for an urgent care claim at the same time you request a first-level appeal of a denied claim by the Claims Administrator.

For other claims, you may request an expedited external review if your claim is denied after the first-level appeal, and:

- The time for completing the standard external review process would jeopardize your life, health or ability to regain maximum function; or

- The denial of the first-level appeal concerned the admission, availability of care, continued stay or health care item or service for which you received emergency services, and you have not yet been discharged from a facility.

In general, the same rules that apply to a standard external review apply to an expedited external review, except that the time frame for decisions and notifications is shorter. The Claims Administrator will immediately conduct a preliminary review to determine if your claim is eligible for an external review. After the preliminary review is complete, the Claims Administrator will immediately notify you of its determination.

If your claim is eligible for an expedited external review, your claim will be assigned to an IRO. The IRO will provide you its final decision as expeditiously as your medical condition or circumstances require, but in no event will the notification be provided later than 72 hours after the IRO receives the request for expedited external review. If you receive a verbal notice, a written notice will follow no more than 48 hours later.

**External Review Decision Is Final.** All claim decisions of the external IRO are final. If the IRO reverses the denial of your claim, the decision will be final and the Plan must immediately provide coverage or payment.

## Step 8: You File Suit in Federal Court

You have the right to file suit in federal court under ERISA Section 502(a) if the Claims Administrator denies your:

- Initial urgent care claim

- First-level appeal of a pre-service, concurrent or post-service medical claim, Dependent Care Reimbursement Account, Work/Life Solutions Plan, Adoption Benefits Plan and Life and AD&D Plan claims

- Second-level appeal of a prescription drug claim, dental (except for urgent care), vision, DVRA and disability claims

- Voluntary appeal

In these cases, you are considered to have exhausted the administrative review process. You must file suit within one year after the date of the claim determination.

The running of the one-year time period may be suspended during a voluntary appeal for urgent care claims.

## RECOVERY OF BENEFITS

The Company has the right to recover benefits payments that are made in error. It may do on its own behalf or through the Claims Administrator or other third party administrators.

For health care plans, payments made in error include, but are not limited to, payments that are:

- More than the amount allowed under a Plan.

- Made incorrectly on behalf of a dependent.

- Made for services the Plan does not cover.

Recovery may be made from any person or health care provider to whom the payments were made or from future benefits the covered person is entitled to.

For disability plans, payments made in error include, but are not limited to, payments that are:

- Wrong.

- Made for any period you fail to provide satisfactory evidence of a covered disability.

- Not reduced by the total amount of certain other sources of income as listed in the Eaton Short Term Disability Plan and Long Term Disability Plan.

Retroactive payments you receive from any of the listed sources of other income must be immediately disclosed to the Claims Administrator. Excess payments will be recovered directly from you, or if necessary, from future benefit payments or from your estate, to the extent permitted by law.

## RIGHTS OF RESTITUTION AND REIMBURSEMENT AND SUBROGATION

If the Plan provides or pays benefits to treat an injury or sickness:

- Caused by the act or omission of another party;

- Covered by no fault or employers' liability laws;

- Covered by Workers' Compensation if disabling;

- Available or required to be furnished by or through national or state governments or their agencies; or

- Sustained on the property of a third party that has premises liability insurance available, then:

The Plan, or Claims Administrator on behalf of the Plan, has the equitable right to recover the value of services and payments made under the Plan as well as an equitable lien on any moneys that might be owed to you for the injury or sickness. This right is by restitution and reimbursement or subrogation, and exists because the benefit payable under the Plan is the net amount of covered claims after taking all other forms of recovery into account. The right of restitution and reimbursement means you or a covered dependent must repay the Plan at the time a recovery is made. Accordingly, if you receive benefits under any of the circumstances listed, you must repay the Plan the amount of the benefits you receive from another source — up to the amount you have received from the Plan — because the Plan has an equitable lien in that amount. Recovery includes all amounts received by you or a covered dependent from any persons, organizations or insurers by way of settlement, judgment, award or otherwise on account of such injury or sickness. The right of subrogation means that the Plan, the Claims Administrator or another third party acting on behalf of the Plan may make claim in your or your covered dependent's name or the Plan's name against any persons, organizations or insurers on account of such injury or sickness.

The rights of restitution and reimbursement or subrogation apply whether or not you or a covered dependent has been fully compensated for his or her losses or damages by any recovery of payments. If a covered person settles a claim against a third party, he or she is deemed to have been made whole by such settlement and the Plan, or the Claims Administrator or other third party acting on behalf of the Plan, is entitled to immediately collect the present value of its subrogation rights as the first priority claim from said settlement or judgment. The Plan is entitled to the first dollars recovered. No attorney's fees will be payable from any subrogation recovery unless the Plan has been notified of the attorney's proposed representation in advance, and unless the Plan has agreed in writing to the representation of the Plan's interests by that attorney.

Under certain circumstances, a covered person will be required to hold the Company and the Plan harmless against future claims for covered expenses pertaining to the injury or sickness for which a settlement is reached.

These rights of restitution and reimbursement or subrogation apply to any type of recovery from any third party, including but not limited to recoveries from tort-feasors, underinsured motorist coverage, uninsured motorist coverage, other substitute coverage or any other right of recovery, whether based on tort, contract, equity or any other theory of recovery. Any amounts a covered person receives from such a recovery must be held in trust for the Plan's benefit to the extent of the Plan's restitution and reimbursement or subrogation claims.

Covered persons must cooperate fully in every effort — by the Plan, the Claims Administrator or another third party acting on behalf of the Plan — to enforce the Plan's rights of restitution and reimbursement or subrogation. Covered persons must not do anything to interfere with those rights. The Plan has the right to discontinue the payment of benefits if the covered person fails to cooperate. The Plan also has the right to seek reimbursement from the covered person for the amount of benefits paid related to that loss. Covered persons agree to promptly inform the Claims Administrator in writing of any situation or circumstance that may allow it to invoke the Plan's rights under this section.

## ACCESS TO RECORDS

By filing a claim for benefits and/or enrolling for coverage under the Plan (including the assignment of default coverage if you do not actively enroll), you authorize the Plan Administrator, Claims Administrator, other third party administrators and their representatives (collectively the "Administrators") to have access to any health records and medical information held by any health care provider who delivers services to you under the Plan. For a disability claim, you further allow access to any health records or medical information held by any health care provider and employment information held by any employer. You also authorize the Administrators to use your health records and medical information for claims processing (including, without limitation, claims for restitution and reimbursement or subrogation under the Plan), health care, dental or disability claims data evaluation, quality of care assessment, health service utilization review and evaluation of potential or actual claims against the Administrators.

## ADMINISTRATION AND OTHER INFORMATION

### Plan Name, Type, Funding and Number

| Plan Name | Plan Type | Plan Funding* | Plan Number |
|---|---|---|---|
| **Eaton Corporation Medical Plan for U.S. Employees, which includes:** <br>• Medical Expense Benefits <br>• Prescription Drug Program <br>• Dental Plan | Group health plan | The Plan is self-insured. Contributions to cover the cost of the Plan are made by enrolled active employees, other covered persons and the Company.<br><br>Plan benefits are funded by the Company in whole or in part through a voluntary employee benefits association ("VEBA") Trust for which Key Trust Company of Ohio, NA, serves as Trustee. The Trustee's address is Key Center, 127 Public Square, Cleveland, OH 44114.<br><br>If the Trust is terminated and residual assets remain after all liabilities and all expenses of the Plans funded by the VEBA and the Trust have been satisfied, the Trustee will, at the direction of the Company, apply those assets to provide (directly or through the purchase of insurance) life, sickness, accident or other permissible benefits to employees, former employees or their eligible dependents under the plans.<br><br>ActiveHealth programs and Expert Medical Opinion are not subject to ERISA. | 590 |
| **Eaton Corporation Medical Plan for U.S. Employees, which includes:** <br>• Vision Plan | Group health plan | The Plan is fully insured under a group insurance contract with Combined Insurance Company of America (Combined). EyeMed Vision Care, Inc. reviews and pays claims on behalf of Combined. Premiums are paid by enrolled active employees through payroll deduction, by other covered persons, and by the Company to Combined from the Company's general assets. | 590 |

| Plan Name | Plan Type | Plan Funding* | Plan Number |
|---|---|---|---|
| **HSA** | A trustee account administered by Fidelity Brokerage Services, LLC | The Company reserves the right to change Health Savings Account contributions at any time for any reason. Contributions are made by the Company and employees. It is not subject to ERISA. | |
| **Eaton Corporation Flexible Benefits Program, which includes:**<br>• Eaton Corporation Health Care Reimbursement Account Plan<br>• Eaton Corporation Dependent Care Reimbursement Account Plan (DCRA) | A cafeteria plan under Section 125 of the Internal Revenue Code. The Health Care Reimbursement Account Plan is a group health plan. The Dependent Care Reimbursement Account Plan is a dependent care plan under Section 129 of the Internal Revenue Code and is not subject to ERISA. | Employees elect before-tax payroll deductions (see pages 7 and 8) to receive benefits under the Plans.<br>Benefits (reimbursement of eligible expenses) are paid from employee contributions and Eaton's general assets. The DCRA is self-insured. | 594 |
| **Eaton Corporation Employee Assistance Program for U.S. Employees (also known as the Eaton Work/Life Solutions Plan and Adoption Benefits Plan), which includes:**<br>• Employee Assistance Program<br>• Eaton Center On-site Health Center<br>• Wellness Information and Tools Program<br>• Tobacco Cessation Program<br>• Legal Assistance Program<br>• Adoption Benefits Plan | Welfare plan offering group health benefits through the Personal Counseling Program, Eaton Center On-site Health Center (Health Center) and the Tobacco Cessation Program; and group legal benefits through the Legal Assistance Program | Except for the Adoption Benefits Plan, Wellness Information and Tools Program, Tobacco Cessation Program, and Health Center, the Work/Life Solutions Plan is fully insured through a contract with Beacon Health Options. The Company pays the full cost of the insurance for these insured programs.<br>The Company pays the full cost of the Adoption Benefits Plan, Wellness Information and Tools Program, Tobacco Cessation Program and Health Center out of its general assets. | 599 |
| **Eaton Corporation Disability Plan for U.S. Employees, which includes:**<br>• Short Term Disability Plan (STD Plan)<br>• Long Term Disability Plan (LTD Plan) | Welfare plan offering disability benefits | The STD Plan is self-insured. Coverage is provided at no cost to eligible employees. Benefits are paid by the Company from its general assets.<br>The LTD Plan is self-insured. Benefits are funded by employees and the Company, in whole or in part, from its general assets. | 596 |

| Plan Name | Plan Type | Plan Funding* | Plan Number |
|---|---|---|---|
| **Eaton Corporation Employee Life Insurance Plan for U.S. Employees, which includes:**<br>• Employee Life Insurance Plan<br>• Employee Accidental Death and Dismemberment Insurance Plan<br>• Spouse/Domestic Partner Life Insurance Plan<br>• Child Life Insurance Plan<br>• Spouse/Domestic Partner Accidental Death and Dismemberment Insurance Plan<br>• Child Accidental Death and Dismemberment Insurance Plan | Welfare plan offering life and accidental death and dismemberment benefits | The Plans are fully insured through a group insurance contract with Metropolitan Life Insurance Company. MetLife reviews and pays claims.<br>Premiums for the Company-paid Employee Life and Accidental Death and Dismemberment Insurance Plans are paid by the Company out of its general assets. Premiums for additional coverage under the Employee Life and Accidental Death and Dismemberment Insurance Plans, and the Spouse/Domestic Partner and Child Life and Accidental Death and Dismemberment Insurance Plans are paid through employee contributions. | 597 |

**Plan Administrator**

Eaton Health and Welfare Administrative Committee
c/o Eaton
1000 Eaton Boulevard
Cleveland, OH 44122

Telephone number: 1-440-523-5000

**Employer and Plan Sponsor**

The Employer and Plan Sponsor is:

Eaton Corporation
1000 Eaton Boulevard
Cleveland, OH 44122

Telephone number: 1-440-523-5000

**Employer Number**

The Employer Identification Number is 34-0196300.

**Agent for Service of Legal Process**

The agent for service of legal process is:

Senior Vice President and Secretary
Eaton
1000 Eaton Boulevard
Cleveland, OH 44122

Telephone number: 1-440-523-5000

Service of legal process may also be made upon the Plan Administrator.

For disputes arising under the Eaton Work/Life Solutions Plan (except for the Tobacco Cessation Program, Wellness Information and Tools, and Health Center), service of legal process may be made upon Beacon Health Options at One Towne Square #600, Southfield, MI 48076.

For disputes arising under the Life Insurance Plan insurance policy, service of legal process may be made upon Metropolitan Life Insurance Company at one of its local offices, or upon the supervisory official of the Insurance Department in the state in which you reside.

**Type of Administration**

Eaton, as Plan Sponsor, has retained the services of Fidelity Employer Services Company, a division of Fidelity Investments Institutional Services Company, Inc., an independent contractor, to assist the Plan Administrator with certain administrative functions (other than claims administration) in connection with most benefits in the Eaton Plans. Fidelity Employer Services Company performs these services under the name "Eaton Service Center at Fidelity.

The Health and Welfare Administrative Committee, as Plan Administrator, is responsible for certain administrative functions as described in this booklet and as required by ERISA. Claims for benefits are administered by the applicable claims administrators.

The Health Savings Account is a trustee account administered by Fidelity Brokerage Services, LLC. Participation in an HSA is a taxpayer responsibility and you are strongly encouraged to consult your tax advisor before opening an HSA. You are also encouraged to review information available from the Internal Revenue Service (IRS) for taxpayers, which can be found on the IRS Web site at www.IRS.gov.

Beacon Health Options administers the programs offered under the Work/Life Solutions Plan (except for the Tobacco Cessation Program, Wellness Information and Tools, and Health Center) under the terms of its contract with Eaton. ActiveHealth Management administers the Tobacco Cessation Program and Wellness Information and Tools under a separate contract with Eaton. Take Care Employer Solutions, LLC administers the Health Center under the terms of a separate contract with Eaton.

The Life Insurance Plan is fully insured. Benefits are provided under a group insurance contract entered into between the Company and Metropolitan Life Insurance Company. Metropolitan Life Insurance Company is responsible for reviewing and paying claims.

**No Contract of Employment**

The Eaton Plans and offer of enrollment options are not intended to be and may not be construed as constituting a contract or other arrangement between an employee and the Company to the effect that an employee will be employed for a specific period of time.

**Non-Assignment of Rights**

No benefit, right or interest of any person covered under any Eaton Plan is assignable. Nothing contained in the Plan or this booklet shall be construed to make the Plan or the Company liable for treatment or services.

**Plan Amendment and Termination**

Although the Company's present intent is to continue the Plans described here indefinitely, you should be aware that the Company retains the right to substitute other coverage or change contributions, or to amend, change, modify or completely terminate the Plan and any programs or options under it, for any or all groups of employees at any time for any reason. Neither this booklet nor any other writing regarding the Plan or the Flexible Benefits Program grants or confers any vested or other rights to any employee, retiree, dependent or any other person for future benefits beyond covered expenses incurred while the applicable Plan, program or option is in effect.

The Company may amend the provisions of any Eaton Plan at any time by written action of an officer of the Company or any individual designated in writing by that officer as authorized to take such action. Designees include (but are not limited to) the employees holding the following positions at the Company's World Headquarters: the "Vice President, Compensation and Benefits" and the "Vice President, Benefits." Amendment will be effective at the time designated in the amendment itself.

The Company may discontinue or terminate any Eaton Plan, in whole or in part, at any time for any reason by written action of an officer of the Company. If an Eaton Plan is terminated, no future benefits will be paid from that Plan, except benefits for covered services received before the Plan's termination date or benefits for disabilities beginning before the plan's termination date.

**Claims Administrators and Suppliers**

| Benefit | Claims Administrator | Claims Filing Address |
|---|---|---|
| Medical Expense Benefits, including MH/SA | Anthem Blue Cross Blue Shield 85 Crystal Run Road Middletown, NY 10940 1-866-EATON02 (1-866-328-6602) | **Claims filing:** Anthem Blue Cross Blue Shield P.O. Box 105187 Atlanta, GA 30348 **Appeals:** Anthem Blue Cross Blue Shield Grievances and Appeals P.O. Box 105662 Atlanta, GA 30348 1-866-EATON02 (1-866-328-6602) |
| | **Utilization Review** | Anthem Managed Care P.O. Box 5076 Middletown, NY 10940-9076 1-866-EATON02 |
| Prescription Drug Program | Express Scripts 8111 Royal Ridge Parkway Irving, TX 75063 1-800-792-9596 | Express Scripts P.O. Box 14711 Lexington, KY 40512 1-800-792-9596 |
| ActiveHealth Management | ActiveHealth Management 3800 Golf Road Rolling Meadows, IL 60008 1-877-489-9391 | NA |
| Fidelity Investments Brokerage Services, LLC | NA | Fidelity Brokerage Services, LLC 900 Salem Street Smithfield, RI 02917 |

| Benefit | Claims Administrator | Claims Filing Address |
|---|---|---|
| Dental Plan | **For written inquiries:**<br>Delta Dental<br>P.O. 30416<br>Lansing, MI 48909<br>1-866-EATON03<br>(1-866-328-6603) | **Claims filing and initial appeal:**<br>Delta Dental<br>P.O. 9085<br>Farmington Hills, MI 48333-9085<br>**Second Appeal:**<br>Eaton Health and Welfare<br>Administrative Committee<br>c/o Eaton<br>1000 Eaton Boulevard<br>Cleveland, OH 44122 |
| Vision Plan | EyeMed Vision Care LLC<br>ATTN: Vision Care Department<br>4000 Luxottica Place<br>Mason, Ohio 45040<br>1-866-723-0513 | EyeMed Vision Care LLC<br>ATTN: Quality Assurance Department<br>4000 Luxottica Place<br>Mason, Ohio 45040<br>1-866-723-0513 |
| Eaton Corporation Flexible Benefits Program, which includes:<br>• Eaton Corporation Health Care Reimbursement Account Plan<br>• Eaton Corporation Dependent Care Reimbursement Account Plan | Acclaris, Inc.<br><br>1-866-203-9358 | **Claims filing and initial appeal:**<br>Acclaris, Inc.<br>P.O. Box 25171<br>Lehigh Valley, PA 18002-5172<br>1-866-203-9358<br>Fax: 1-813-830-7900<br>**Second Appeal:**<br>Eaton Health and Welfare<br>Administrative Committee<br>1000 Eaton Boulevard<br>Cleveland, OH 44122 |
| Counseling Program, Legal/Financial Consultation, Concierge, Child and Elder Care Services | Beacon Health Options<br>48651 Alpha Drive, Suite 150<br>Wixom, MI 48393-3442<br>1-800-531-7988<br>www.achievesolutions.net | Beacon Health Options<br>48651 Alpha Drive, Suite 150<br>Wixom, MI 48393-3442<br>1-800-531-7988<br>www.achievesolutions.net |
| Wellness Information and Tools Program, Tobacco Cessation Program, and Eaton Center On-site Health Center | Eaton Health and Welfare<br>Administrative Committee<br>1000 Eaton Boulevard<br>Cleveland, OH 44122<br>1-440-523-5000 | Eaton Health and Welfare<br>Administrative Committee<br>1000 Eaton Boulevard<br>Cleveland, OH 44122<br>1-440-523-5000 |
| Adoption Benefits Plan | Eaton Service Center at Fidelity<br>1-866-EATON01<br>(1-866-328-6601) | Eaton Service Center at Fidelity<br>1-866-EATON01<br>(1-866-328-6601) |
| Eaton Corporation Disability Plan, which includes:<br>• Short Term Disability Plan (STD Plan)<br>• Long Term Disability Plan (LTD Plan) | **General Correspondence:**<br>Sedgwick<br>P.O. Box 14449<br>Lexington, KY 40512-4449<br>1-866-869-6387 | **Initial appeal:**<br>Sedgwick<br>P.O. Box 1981<br>Chicago, IL 60690<br>1-866-869-6387<br>**Second Appeal:**<br>Eaton Health and Welfare<br>Administrative Committee<br>1000 Eaton Boulevard<br>Cleveland, OH 44122 |

| Benefit | Claims Administrator | Claims Filing Address |
|---|---|---|
| Eaton Corporation Employee Life Insurance Plan for U.S. Employees, which includes:<br>• Employee Life Insurance Plan<br>• Employee Accidental Death and Dismemberment Insurance Plan<br>• Spouse/Domestic Partner Life Insurance Plan<br>• Child Life Insurance Plan<br>• Spouse/Domestic Partner Accidental Death and Dismemberment Insurance Plan<br>• Child Accidental Death and Dismemberment Insurance Plan | Metropolitan Life Insurance Company<br>One Madison Avenue<br>New York, NY 10010 | The life insurance and accidental death and dismemberment plans are insured under group policy number 27700-G issued to the Company by Metropolitan Life Insurance Company.<br>Claims and Appeals Correspondence:<br>Metropolitan Life Insurance Company<br>P.O. Box 6115<br>Utica, NY 13504-6115 |
| Travel Assistance Plan | AXA Assistance USA<br>Suite 1000<br>122 S. Michigan Avenue<br>Chicago, IL 60603<br>1-800-454-3679 or call collect: 1-312-935-3783 | NA |

## Other Third Party Administrators

**COBRA/Billing Services Administrator.** The Eaton Service Center at Fidelity
Telephone number: 1-866-EATON01 (1-866-328-6601)

**Qualified Medical Child Support Order (QMCSO) Administrator.** QDRO Consultants Company
Telephone number: 1-800-527-8481

## Plan Year

All Plan records are compiled on an annual basis from January 1 through December 31 — the calendar year. The Plan Year is referred to as the "year" or the "calendar year" in this booklet.

## Alternate Payee Provision

Under normal conditions, Eaton Medical, Dental and Vision Plans benefits are payable to you and can only be paid directly to another party upon signed authorization from you. If conditions exist under which a valid release or assignment cannot be obtained, the Plan may make payment to any individual or organization that has assumed the care or principal support for you and is equitably entitled to payment. The Plan must make payments to your separated/divorced spouse, state child support agencies or Medicaid agencies if required by a qualified medical child support order (QMCSO) or state Medicaid law.

The Plan may also honor benefit assignments made prior to your death in relation to remaining benefits payable by the Plan.

Any payment made by the Plan in accordance with this provision will fully release the Plan of its liability to you.

**Reliance on Documents and Information**

Information required by the Plan Administrator may be provided in any form or document that the Plan Administrator considers acceptable and reliable. The Plan Administrator relies on the information provided by you and your dependents seeking coverage when evaluating coverage and benefits under the Plan. All such information must be accurate, truthful and complete.

The Plan Administrator is entitled to conclusively rely upon, and is protected for any action taken in good faith when relying upon, information you or others provide. Any act, practice or omission that constitutes fraud or any intentional misrepresentation of material fact may result in the denial of the claim, cancellation or rescission of coverage, or any other legal remedy available to the Plan. Inadvertent omissions or unintentional misrepresentations are not grounds for rescission of coverage.

**No Waiver**

The failure of the Plan Administrator to enforce strictly any term or provision of this Plan will not be construed as a waiver of such term or provision. The Plan Administrator reserves the right to enforce strictly any term or provision of this Plan at any time.

**Physician/Patient Relationship**

This Plan is not intended to disturb the relationship between a physician or other health care provider and the patient. Physicians and other health care providers are not agents or delegates of the employer, Plan Administrator or the Health Plan Claims Administrator. Nothing contained in this Plan requires you or your dependent to commence or continue medical treatment by a particular provider. Further, nothing in this Plan limits or otherwise restricts a physician's judgment with respect to the physician's ultimate responsibility for patient care in the provision of medical services to you or your dependent.

**Intention of the Dental Plan to Be Grandfathered**

The Eaton Corporation Dental Plan (the Plan) believes the Plan is a "grandfathered health plan" under the Patient Protection and Affordable Care Act (the Affordable Care Act). As permitted by the Affordable Care Act, a grandfathered health plan can preserve certain basic health coverage that was already in effect when that law was enacted. Being a grandfathered health plan means that our dental plan may not include certain consumer protections of the Affordable Care Act that apply to other plans. However, grandfathered health plans must comply with certain other consumer protections in the Affordable Care Act, for example, the elimination of lifetime limits on benefits. It should be noted that the Plan does provide many of the benefits and protections required for non-grandfathered plans.

Questions regarding which protections apply and which protections do not apply to a grandfathered health plan and what might cause a plan to change from grandfathered health plan status can be directed to the Plan Administrator at the Eaton Service Center at Fidelity 1-866-EATON01 (1-866-328-6601). You may also contact the Employee Benefits Security Administration, U.S. Department of Labor at 1-866-444-3272 or www.dol.gov/ebsa/healthreform. This web site has a table summarizing which protections do and do not apply to grandfathered health plans.

## USE AND DISCLOSURE OF PROTECTED HEALTH INFORMATION UNDER HIPAA

The Health Insurance Portability and Accountability Act of 1996, as amended (HIPAA), is a federal law that requires health plans to protect the confidentiality of your private health information. Private health information, or protected health information, is referred to as "PHI." Your rights under HIPAA are described in the *Plan's Notice of Privacy Practices*. You can find the Notice along with Frequently Asked Questions in the Reference Library under the Health & Insurance tab on Fidelity NetBenefits. The Notice is also available from the Eaton Service Center at Fidelity.

## STATEMENT OF ERISA RIGHTS

As a participant in the Eaton Plans, you are entitled to certain rights and protections under the Employee Retirement Income Security Act of 1974 (ERISA). ERISA provides that all Plan participants will be entitled to:

### Receive Information About Your Plan and Benefits

You are entitled to examine — at no charge — at the Plan Administrator's office and at other specified locations, all documents governing the Plan, including insurance contracts and collective bargaining agreements, if applicable. You may also examine at no charge a copy of the latest annual report (Form 5500 Series) filed by the Plan with the U.S. Department of Labor and available at the Public Disclosure Room of the Employee Benefits Security Administration.

You may obtain, upon written request to the Plan Administrator, copies of documents governing the operation of the Plan, including insurance contracts and collective bargaining agreements, if applicable, and copies of the latest annual report (Form 5500 Series) and updated Summary Plan Description. The Plan Administrator may make a reasonable charge for the copies.

You are entitled to receive — at no charge — a summary of the Plan's annual financial report. The Plan Administrator is required by law to furnish each participant with a copy of the summary annual report.

### Continue Group Health Plan Coverage

You may continue health care coverage for yourself, your spouse or your dependents if you or your dependent(s) lose coverage under the Plan because of a qualifying event. You or your dependents may have to pay for such coverage. Review your Summary Plan Description and the documents governing the Plan on the rules of COBRA continuation coverage rights.

Your group health plan or health insurance issuer should provide you with a certificate of creditable coverage — at no charge — when:

- You lose coverage under the Plan,
- You become entitled to elect COBRA continuation coverage, and/or
- Your COBRA continuation coverage ends.

If you do not receive the certificate of creditable coverage, you must request the certificate within 24 months of losing coverage.

Having creditable coverage from another plan may reduce or eliminate any exclusionary periods of coverage for preexisting conditions under your group health plan. Without evidence of creditable coverage, you may be subject to a preexisting condition exclusion for 12 months (18 months for late enrollees) after you enroll in your coverage.

### Prudent Actions by Plan Fiduciaries

In addition to creating rights for Plan participants, ERISA imposes duties upon the people who are responsible for the operation of the employee benefit plan. The people who operate your Plan, called fiduciaries of the Plan, have a duty to do so prudently and in the interest of you and other Plan participants and beneficiaries. No one, including your employer, your union or any other person, may fire you or otherwise discriminate against you in any way to prevent you from obtaining your welfare benefit or exercising your rights under ERISA.

**Enforce Your Rights**

If your claim for a welfare benefit is denied or ignored, in whole or in part, you have a right to know why this was done, to obtain copies of documents relating to the decision without charge and to appeal any denial, all within certain time schedules.

Under ERISA, you can take steps to enforce the above rights. For example, you can file suit in a federal court if you:

- Request a copy of Plan documents or the latest annual report from the Plan and do not receive it within 30 days. In such a case, the court may require the Plan Administrator to provide the materials and pay you up to $110 a day until you receive the materials, unless the materials were not sent because of reasons beyond the control of the Plan Administrator.

- Exhaust the claims procedures described in this Summary Plan Description and your claim for benefits is denied or ignored, in whole or in part. (You may also file a claim in state court.)

- Disagree with the Plan's decision or lack thereof concerning the qualified status of a domestic relations order or a medical child support order.

- Are discriminated against for asserting your rights. (You may also seek assistance from the U.S. Department of Labor.)

You may also seek assistance from the U.S. Department of Labor or file suit in a federal court if it should happen that the Plan fiduciaries misuse the Plan's money.

The court will decide who should pay court costs and legal fees. If you are successful the court may order the person you have sued to pay these costs and fees. If you lose, the court may order you to pay these costs and fees, for example, if it finds your claim is frivolous.

**Assistance with Your Questions**

If you have any questions about your Plan, you should contact the Plan Administrator.

If you have any questions about this statement or about your rights under ERISA, or if you need assistance in obtaining documents from the Plan Administrator, you should contact:

- The nearest office of the Employee Benefits Security Administration, U.S. Department of Labor, listed in your telephone directory; or

- The Division of Technical Assistance and Inquiries
  Employee Benefits Security Administration
  U.S. Department of Labor
  200 Constitution Avenue N.W.
  Washington, D.C. 20210

You may also obtain certain publications about your rights and responsibilities under ERISA by calling the publications hotline of the Employee Benefits Security Administration.

For more information about your rights under ERISA, including COBRA, the Health Insurance Portability and Accountability Act (HIPAA), and other laws affecting group health plans, contact the nearest Regional or District Office of the U.S. Department of Labor's Employee Benefits Security Administration (EBSA) in your area or visit the EBSA web site at www.dol.gov/ebsa or call their toll-free number at 1-866-444-3272. For more information about health insurance options available through a Health Insurance Marketplace, visit www.healthcare.gov. (Addresses and phone numbers of Regional and District EBSA Offices are available through EBSA's web site.)

## ERISA RIGHTS DO NOT APPLY TO CERTAIN PROGRAMS

Your Health Savings Account is not an ERISA covered plan. As a result, Eaton has no fiduciary responsibility under ERISA with respect to the HSA, and claims with respect to the HSA are managed solely by Fidelity Investments.

ActiveHealth programs and Expert Medical Opinion, as described on pages 43 and 44, are not subject to ERISA.

## PLAN INTERPRETATION

Benefits under the Eaton Plans will be paid only if the Plan Administrator and/or the appointed Claims Administrator decides that the applicant is entitled to them under the terms of the Plan. The Plan Administrator and/or the Claims Administrator has discretionary authority to determine eligibility for benefits and to construe any and all terms of the Plan, including but not limited to any disputed or doubtful terms. The Plan Administrator and/or Claims Administrator also has the power and discretion to determine all questions arising in connection with the administration, interpretation and application of the Plan. Any and all determinations by the Plan Administrator and/or Claims Administrator will be conclusive and binding on all persons, except to the extent reviewable by a court with jurisdiction under ERISA after giving effect to the time limits described in the "Claims Appeal Procedure" section of this booklet.

## COLLECTIVE BARGAINING AGREEMENT

If your employment is covered by a collective bargaining agreement that specifically allows for your participation in the Plans described in this booklet, your participation is subject to the terms and conditions of the collective bargaining agreement and the Plans.

Participants and beneficiaries may obtain a complete list of the Plan's sponsoring organizations by writing to the Plan Administrator at the address shown under "Administration and Other Information — Plan Administrator."

As a covered employee, you may obtain a copy of your respective collective bargaining agreement by writing to the Plan Administrator at the address shown under "Administration and Other Information — Plan Administrator." The Company may charge you a reasonable amount for the copy. As a covered employee, provided you give reasonable advance notice of your visit, you may also examine a copy of your respective collective bargaining agreement at Eaton at that same address or at the union office during normal business hours.

Participants and beneficiaries may obtain a complete list of the Plan's sponsoring organizations by writing to the Plan Administrator at the address shown under "Administration and Other Information — Plan Administrator."



© 2016 Eaton
All Rights Reserved
Printed in USA
January 2016

Eaton
1000 Eaton Boulevard
Cleveland, OH 44122

Health and Insurance Plans
01/16
3.EA-H-364H.106

# FAX

EXHIBIT

B

**To: 5013251333**
Company:
Fax: 5013251333
Phone:

**From: e0072882**
Fax:
Phone: + 1 440 523 5143
E-mail: BonnieLGraff@Eaton.com

## NOTES:

.



*Powering Business Worldwide*

Eaton - Benefits Department
Eaton
1000 Eaton Blvd.
Beachwood, OH 44122

**Fax**

| Date | February 1, 2018 | Pages | 18 |
|------|------------------|-------|-----|
| To | Daniel A. Webb, Esq. | From | Bonnie Graff |
| Fax | 501.325.1333 | Fax | 440-523-3413 |
| Phone | 501.372.2400 | Phone | 440-523-5143 |
| | | Email | bonnielgraff@eaton.com |

Subject    Kathy Blagg's final level Long Term Disability appeal determination letter. Paper
copy also sent via United Parcel Service.



Powering Business Worldwide

February 1, 2017

Daniel A. Webb, Esq.
Attorney at Law
425 West Capitol Avenue
Suite 1586
Little Rock, Arkansas 72201

Re: Second Level Appeal of Long Term Disability Claim of Kathy Blagg – Claim Number
B443001817-0001-02

Dear Mr. Webb:

The Eaton Corporation Health and Welfare Administrative Committee (the "Committee") has had
the opportunity to review and consider the second level appeal (the "Appeal") you filed on behalf
of your client, Kathy Blagg, seeking the reinstatement of long-term disability benefits under the
Eaton Corporation Long Term Disability Plan (the "LTD Plan" or the "Plan").

**Procedural History**

The Administrative Record regarding your client's claim indicates that Ms. Blagg was employed
as an Manufacturing Assembly Technician at the Eaton facility in Searcy, Arkansas. Upon
review, the records show that she first started her employment with Eaton in August, 1992, and
her first day of absence in connection with this benefits claim was on or around April 9, 2014. As
of that date she was approved for disability benefits under the Eaton Corporation Short Term
Disability Plan ("STD Plan"). The short term benefits as provided under the STD Plan were
exhausted as of October 8, 2014, and your client was then transitioned onto the LTD Plan. Her
claim for long-term disability benefits under the LTD Plan was initially approved on or around
October 8, 2014.

In a letter dated August 4, 2016, Sedgwick Claims Management Services, Inc. ("Sedgwick"), the
claims administrator for the LTD Plan determined that Ms. Blagg was no longer entitled to
disability benefits under the LTD Plan for the period on or after the date of its letter – August 4,
2016. In response to this denial decision, you filed a first-level appeal on behalf of your client
contesting the denial of her long-term disability benefits under the Plan in a letter received by
Sedgwick on or around February 1 2017. While conducting its review, you submitted a letter to
Sedgwick dated March 1, 2017 seeking to suspend the review in order to submit additional
medical records in support of your client's appeal. In response to this request, Sedgwick
suspended its review until March 21, 2017.

February 1, 2017
Page 2

Once this suspension period expired, Sedgwick then completed its initial review of your client's appeal and, in a letter dated March 31, 2017, informed your client that the benefits denial decision under the LTD Plan was being upheld. This letter also advised your client that a second-level appeal could be submitted within 180 days of such letter's receipt.

After receipt of this first level denial, you submitted a letter to Sedgwick that was received on August 25, 2017. This letter indicated that you were filing a second level appeal on behalf of your client with the Committee. Subsequent to the filing of this second level appeal, you indicated in letters received by Sedgwick on or around September 15, 2017, October 24, 2017 and November 10, 2017, that you would be submitting additional medical information related to the claim. Sedgwick acknowledged those letters and approved additional time for you to submit additional medical documentation. The final extension to submitted additional information expired on November 24, 2017 and the Committee then re-commenced its review. Upon re-commencing its review, the Committee had twenty-four (24) days remaining in its initial forty-five (45) period to review your claim. Thus, the initial deadline (without an extension) for making a decision on your client's second level appeal was December 18, 2017.

On December 11, 2017, Sedgwick sent you a forty-five (45) day extension letter stating the claim was still under review by the Committee and that additional time was need to finalize its review and that you and your client would receive a written response regarding your client's appeal by February 1, 2017.

The entire claim file, including the documentation and information that was submitted in support of your client's appeal, as well as the independent reviews provided by medical experts was given a "fresh look" by the Committee. As explained below, the Committee has now determined to uphold the denial of disability benefits under the terms of the LTD Plan.

**Applicable Plan Provisions**

Pursuant to the provisions of the LTD Plan, in order to be eligible for long-term disability benefits, your client must be covered under the Plan and:

- Have a covered disability as defined below;
- Be under the continuous care of a licensed health care practitioner; **and**
- Sign and return a copy of the Overpayment Reimbursement Agreement provided by the Claims Administrator. Benefit payments are suspended until the Claims Administrator receives the form.

\* \* \*

You are considered to have a covered disability (see "Disabilities the Plan Does Not Covered" below for certain exceptions) under the Plan if, you are unable to work as the result of an occupational or non-occupational illness or injury. The work you are unable to do is defined differently over the course of a disability. You will be considered disabled:

February 1, 2017
Page 3

| If During ... | Your Disability Makes You ... |
|---|---|
| Months 1 – 23, including six months of short term disability | Totally and continuously unable to perform the essential duties of your regular position or any suitable alternative position with the Company. |
| Month 24 until you are no longer disabled or retire | Totally and continuously unable to engage in any occupation or perform any work for compensation or profit for which you are, or may become, reasonably well fit by reason of education, training or experience — at Eaton or elsewhere. |

The Company, at its sole discretion, determines the availability and suitability of alternative positions at Eaton.

*See page 137, Long Term Disability Plan Summary Plan Description, effective January 1, 2016 ("2016 LTD SPD").*

**Medical Information**

Objective findings of a disability are necessary to substantiate the period of time your health care practitioner indicates you are disabled. Objective findings are those that can be observed by your health care practitioner through objective means, not from your description of the symptoms. Objective findings include:

- Physical examination findings (functional impairments/capacity);
- Diagnostic test results/imaging studies;
- Diagnoses;
- X-ray results;
- Observation of anatomical, physiological or psychological abnormalities; and
- Medications and/or treatment plan

*See page 143, Long Term Disability Plan Summary Plan Description, effective January 1, 2016 ("2016 LTD SPD").*

The Plan provides that Long Term Disability benefits will end when, among other events:
- You no longer have a covered disability under the Plan, as determined by the Claims Administrator;
- The first day for which you are unable to provide satisfactory evidence of a covered disability;
  *See page 141, 2016 LTD SPD.*

February 1, 2017
Page 4

The LTD Plan grants the Committee discretionary authority regarding the interpretation of the
LTD Plan and states that disability benefits will be paid:

> only if the Plan Administrator and/or the appointed Claims Administrator decides
> that the applicant is entitled to them under the terms of the Plan. The Plan
> Administrator and/or Claims Administrator has discretionary authority to
> determine eligibility for benefits and to construe any and all terms of the Plan,
> including but not limited to, any disputed or doubtful terms. The Plan
> Administrator and/or Claims Administrator also has the power and discretion to
> determine all questions arising in connection with the administration, interpretation
> and application of the Plan. Any and all determinations by the Plan Administrator
> and/or Claims Administrator will be conclusive and binding on all persons, except
> to the extent reviewable by a court with jurisdiction under ERISA after giving
> effect to the time limits descried in the "Claims Appeal Procedure" section of this
> booklet.
>
> *See page 168, 2016 LTD SPD.*

As set forth under in the SPD, the Committee is the "Plan Administrator" and Sedgwick is the
"Claims Administrator" with respect to the long term disability benefits provided under the Plan.

*See page 163, 2016 LTD SPD.*

**Reasons for Claim Denial and Application of the Plan**

After conducting a full and fair review, the Committee has determined that the submitted medical
evidence is inadequate to support the approval of your client's appeal for reinstatement of long
term disability benefits under the LTD Plan for the period on or after August 6, 2016. During this
second level appeal, the submitted medical records, including the reports and records from your
client's treating physicians, were reviewed and analyzed by two independent physician reviewers
who are members of an independent third-party medical review organization. In addition, the
Committee also considered the results of the findings set forth in the initial medical reviews as
conducted at the request of Sedgwick. Further, the Committee reviewed and considered the
following reports in making its decision:

(i)     Functional Capacity Examination – performed on March 2, 2016;

(ii)    Independent Medical Examination – performed on April 5, 2016 and follow-up
        Report related to Independent Medical – dated June 8, 2016;

(iii)   Transferable Skill Analysis – dated August 2, 2016; and

(iv)    Labor Market Survey – dated August 2, 2016.

February 1, 2017
Page 5

One of the critical points with respect to your client's appeal relates to the shifting disability standard that is applicable to this claim. The applicable standard set forth under the LTD Plan for determining whether an employee is disabled and entitled to benefits changes after 24 months of coverage.

As noted in the Plan's Summary Plan Description, after 24 months of receiving benefits under the Plan (including 6 months of short-term disability benefits), an individual will only be deemed disabled if such person is:

> Totally and continuously unable to engage in **any** occupation or perform **any** work for compensation or profit for which you are, or may become, reasonably well fit by reason of education, training or experience — at Eaton or elsewhere.
>
> *See page 137, 2016 LTD SPD.*

This is generally known as the "any occupation" disability standard and became the standard applicable to your client's claim for disability benefits under the LTD Plan for the period after April 8, 2016.

The primary basis of your client's claim for the reinstatement of long term disability benefits relates to various complaints of shoulder, neck and extremity pain along with migraine headaches. The submitted medical records set forth the following health issues: bone contusion of right heel, chronic stress, right lumbosacral disc degeneration, low back pain with right radiculopathy L5-S1 nerve root, degenerative facet disease cervical spine, buttock/ thigh pain, abdominal pain in the right side of abdomen, plantar fasciitis, gastroesophageal reflux disease, gas and bloating, right hip trochanteric bursitis/arthritis and systolic hypertension. The Committee also notes that your client has been prescribed certain prescription medications and over-the-counter medications to address her medical issues, including Centrum Silver, Famotidine, Gaviscon, HM Vitamin D3, Potassium Chloride, Gabapentin, Robaxin, Sertraline HCl, TIZANidine HCl, Toporol XL, Tylenol with Codeine.

In early 2016, as part of its ongoing review of your client's entitlement to long term disability benefits, Sedgwick directed Ms. Blagg to undergo a functional capacity evaluation with an independent evaluator and to also undergo an independent medical examination with an independent physician.

A Functional Capacity Evaluation ("FCE") was performed on March 2, 2016 by Stuart Jones (a physical therapist), to determine the functional abilities of your client related to her various complaints of back, neck, shoulder, arm, foot and hip pain. The FCE Report as prepared by Therapist Jones noted that Ms. Blagg demonstrated the following:

> Material handling – 0 lbs. from floor to waist height; 5 lbs. from 12-inch from floor to waist height; 5 lbs. from waist to shoulder height; 0 lbs. from waist to overhead height.

February 1, 2017
Page 6

According to the FCE Report, an unreliable effort was put forth by your client, with only 26 of 55 statistical consistency measures within expected limits. According to Therapist Jones, Ms. Blagg did not put forth consistent effort during the evaluation. For example, Ms. Blagg failed to exert enough force to register on the dynamometer which has a minimum force of 4 lbs. This is not consistent with her previously demonstrated ability to hold a 10 lb. box stationary at waist level during dynamic lifting tests as conducted during the same FCE.

Ms. Blagg failed all horizontal strength change tests given. Notably, during active range of motion ("AROM") testing she demonstrated that she was not able to move forward more than 31 degrees. However, during functional aspects of testing, she was observed repeatedly assuming a position with her upper body parallel to the floor. She also had numerous signs of non-organic symptoms when she participated in a series of tests to identify the presence of non-physiological signs of pain. It was noted that she produced positive results with respect to this series of tests. Therapist Jones commented that Ms. Blagg did not demonstrate the ability to work at any Physical Demand Level over the course of an 8 hour workday and produced very inconsistent and unreliable results, so according to the FCE Report the actual physical abilities of Ms. Blagg remain unknown.

In addition to the FCE, an Independent Medical Exam ("IME") was performed by Thomas Rooney, M.D. on April 5, 2016. Dr. Rooney is unconnected and independent from the LTD Plan and the Committee. In his IME Report, Dr. Rooney summarized his review of the medical records as submitted with the claim, including the notes and reports as prepared by your client's treating physicians. The IME Report also summarizes the findings and opinions set forth in the FCE Report prepared by Therapist Jones.

Dr. Rooney noted that Ms. Blagg was initially seen by Dr. Berkheimer for pain with respect to her "entire right foot." She had been off work when she saw Dr. Berkheimer on April 8, 2014. The submitted medical records indicate that your client had shots in her right foot for what was thought to be plantar fasciitis and bunions. She decided to see another doctor, Dr. Jesse Burks in May 2015. An MRI of her foot performed around this time showed that Ms. Blagg had bone marrow edema. As a result of this MRI, she was placed in a cast from June 2015 to November 2015 and prescribed anti-inflammatory medication. However, Ms. Blagg was unable to take the anti-inflammatory medication because of certain GI problems.

The medical records as reviewed by Dr. Rooney with respect to the IME indicate that Ms. Blagg started having pain in her right hip and leg while in the cast with the pain going into the big toe. He noted that another treating physician, Dr. Hefley, injected the trochanteric bursa three times without benefit and subsequently referred your client to Dr. Brad Thomas. The last injection was performed in January 2016. The medical records indicated that these injections were not beneficial. Ms. Blagg was then placed on Flexeril and prednisone. X-rays were done which showed inflammation. The IME Report notes that the medical records indicate that Ms. Blagg's major pain is located in her back and outer aspect of her right hip. She can walk for about 30 to 45 minutes; however, she informed Dr. Rooney that she cannot pick things up off the floor and uses a dust pan to pick up things she has dropped.

February 1, 2017
Page 7

After review of the medical records and FCE Report, Dr. Rooney then conducted a physical examination of Ms. Blagg. The IME Reports notes that Ms. Blagg showed a slight antalgic gait on the right side, but her overall balance was good. Dr. Rooney noted that she had difficulty with the heel/toe stand and that she is unable to squat down. However, on standing erect, the IME Report notes that Ms. Blagg:

> Has normal curvatures in the cervical, thoracic and lumbar spines. In the cervical spine, she rotates 50 degrees in either direction, extension is 40 degrees, flexion is full. There is no spasm. She does have tenderness in the right paravertebral muscles and trapezius, and both shoulders. There is full range of motion in both shoulders, but pain with anything above 90 degrees. There is no definite weakness in the upper extremities, except her grip strength is 2-kilograms on either side. If she combines hands, she can grip to 3-kilograms.

> The IME Report also notes that Ms. Blagg had complaints of pain in the lumbosacral area on the right side with attempted motion and there is "generalized tenderness throughout the lumbar spine." However, Dr. Rooney noted that no spasm occurred and the "iliac crests are level." The IME Report states that Ms. Blagg has full range of motion in her hips, knees and ankles and that she possesses full motion in both of her feet, Dr. Rooney also noted that your client has mild tenderness about her heel on the right side; however, it is not well-localized and there are good pedal pulses present. The IME Report does recognize the following:

> In the sitting position, straight leg raising on either side produces severe low back and leg pain, aggravated by popliteal compression and plantarflexion of either ankle. She has similar strongly positive straight leg raising supine, which again is made worse by hip flexion and plantarflexion of the feet. She has full painless motion in both hips.

Even with consideration of these pain issues related to certain actions while sitting, Dr. Rooney did not find that these issues would rise to the level to support a disability finding. After review of the medical records, including the MRI images, and conducting his physical examination of your client, the IME Report as completed by Dr. Rooney states that he found no reason "why Ms. Blagg would be unable to perform her normal job responsibilities."

After review of the IME Report, additional information was requested from Dr. Rooney related to the same. Specifically, a series of additional inquiries were presented to Dr. Rooney regarding his IME Report and in a correspondence dated June 8, 2016, he provided the following responses:

1.  Pain on the entire right side of her body from her neck to her toes, starting in 2013 as she was moving a TV and pain occurred in her back and right foot.

2.  Diagnosis is multilevel cervical and lumbar degenerative disc disease, which she had prior to her injury.

3.  The only objective findings are those on MRIs and x-rays. Her observable subjective complaints do not correlate with her objective findings.

February 1, 2017
Page 8

    4.    She does have mild to moderate impairment because of the degenerative spinal problems, which would interfere with her ability to do repeated lifting and bending, and repeated rotational movements in the cervical spine.

    5.    Identify level of functionality. This was attempted on an FCE done on 03/02/2016, which showed an unreliable effort put forth making the whole exam invalid.

    6.    The behaviors exhibited by the claimant are not consistent with the records and complaints. Her basic objective findings again are multilevel degenerative disc disease cervical and lumbar.

    7.    In an 8 hour day she can sit for 2 hours before taking a break. The total length of time she can sit in a day would be 6 hours. She can stand a full 8 hours taking a break every couple of hours to do range of motion exercises. The total length of time she can stand in a day would be 6 hours. There is no limit to the amount of walking she can do.

        a)    She has no restrictions of limitations of the upper extremities, overreaching, pulling, and lifting.

        b)    There are no restrictions on her use of the lower extremities other than those mentioned above. She will have limitations on repetitive movements, such as bending, stooping, crawling and climbing due to the degenerative changes in her spine.

In addition to the FCE and IME, a Transferable Skills Analysis ("TSA") was also performed at the request of Sedgwick. This TSA Report was dated August 2, 2016 and described Ms. Blagg's employment history, diagnoses and the conclusions and opinions set forth in both the FCE and IME reports. The TSA notes that Ms. Blagg has "mild to moderate impairment" because of degenerative spinal problems which would interfere with her ability to do repeated lifting and bending, and repeated rotational movements in the cervical spine. The TSA Report notes that in an 8 hour day, Ms. Blagg can sit for 2 hours before taking a break for a total of 6 hours/day. She can stand a full 8 hours taking a break every couple of hours to do range of motion exercises. Total length of time she can stand in a day would be 6 hours. However, there is no limit to the amount of walking she can do. She has no restrictions or limitations of the upper extremities, overreaching, pulling and lifting. However, the TSA Report noted that she will have limitations on repetitive movements, such as bending, stooping, crawling, and climbing due to the degenerative changes in her spine.

The TSA Report noted that the FCE of March 2, 2016 was considered invalid by the evaluator because of lack of effort on the part of Ms. Blagg. However, the FCE Report did demonstrate her ability to occasional lift/carry of up to 5 lbs. She also demonstrated the ability to frequently walk, and to perform tasks related to handling, fingering and sitting. She demonstrated the ability to occasionally stoop, crouch, climb stairs, bilateral reaching immediate and right overhead, and stand.

February 1, 2017
Page 9

Based upon these findings, the TSA Report notes that the following possible employment options exist for your client:

Assembler, Small Products; Receptionist; Telephone Operator; Security Guard; Information Clerk; Order Clerk; Telephone Solicitor; Cashier.

In addition to a TSA, a Labor Market Survey ("LMS") was also conducted. The LMS Report was also dated August 2, 2016. This LMS Report concluded that there appears to be a reasonable and stable labor market for Ms. Blagg in the Searcy, AR area considering her education, work history and physical limitations outlined in the IME report of Dr. Thomas Rooney.

In addition to the IME, FCE, TSA and LMS, all the submitted medical records were then sent to two (2) independent medical reviewers affiliated with the Medical Review Institute of America, Inc. ("MRIoA"). The MRIoA reviewers were unconnected to the previous medical reviews as performed by Dane Street and these reviewers are also independent from both the LTD Plan and the Committee.

Specifically, your client's entire medical file, along with the FCE, IME, TSA and LMS Reports, were submitted to the following independent medical physicians for review:

(i)     *Simon Anthony Salerno, M.D.* - Board Certified by the American Board of Neurological Surgery in General Neurological Surgery. Dr. Salerno has been in active practice since 2000; and

(ii)    *William Tontz, Jr., M.D.* - Board Certified by the American Board of Orthopaedic Surgery in General Orthopaedic Surgery and has completed a Fellowship in spine surgery. Dr. Tontz has been in active practice since 1999.

In conducting his review, Dr. Salerno examined the administrative documents and medical information as provided with your client's disability appeal. Upon review of the submitted medical records, Dr. Salento noted that the claimant is a 67 year old female who presented with back and right lower extremity pain and complains of numbness of the right big toe. The report prepared by Dr. Salerno notes that Ms. Blagg was initially evaluated on January 22, 2015 by Dr. Thomas. Dr. Thomas noted back pain with radiation to the right lower extremity. A neurologic examination was found to be non-focal. An MRI did not reveal the presence of neural impingement; however, an electromyography ("EMG") revealed evidence of right L5 radiculopathy and Dr. Thomas performed several selective nerve blocks at L5.

The report also notes that a CT myelogram was performed on September 14, 2015 and revealed the absence of significant central compression, or nerve root cutoff. On June 28, 2016, Dr. Thomas noted a non-focal physical examination with exception of decreased flexibility of the right lower extremity. An MRI of the lumbar spine reportedly revealed mild degenerative disc disease without focal stenosis. The claimant was then referred to Dr. Rosenzweig. On October 31, 2016, Dr. Rosenzweig noted 75% pain relief with the sacroiliac (SI) joint and right trochanteric bursa injection.

February 1, 2017
Page 10

In his report, Dr. Salerno noted that Ms. Blagg has multiple axial and extremity complaints and had a non-focal examination. Imaging revealed mild degenerative findings of the lumbar spine. Further, based on the IME Report completed by Dr. Rooney, the claimant's impairments are as follows: sit for 2 hours at a time for a total of 6 hours, stand for 6 hours, and no limit to walking. Dr. Salerno pointed out that there are no upper extremity restrictions noted, including overreaching, pulling, and lifting in the IME Report. Further, there is no objective evidence that claimant is unable to perform a job.

Dr. Salerno noted that the examinations conducted by multiple medical providers have been non-focal with imaging revealing mild degenerative findings. Further, the FCE was found to be unreliable due to submaximal effort of the claimant during the evaluation. Dr. Salerno pointed out that the signs and symptoms one would expect to see, for these health conditions, that would prevent someone from performing any occupation would include:

objective neurological findings such as myelopathy and severe motor or sensory deficits. In addition, the claimant would have significant gait abnormality or upper extremity impairment to prevent someone from performing any occupation.

In his report, Dr. Salerno noted that these symptoms were not present with respect to the submitted medical information.

Further, Dr. Salerno noted that Ms. Blagg takes multiple medications, including muscle relaxants and opiates. Therefore, certain work could be precluded with concomitant use of opiates and muscle relaxants due to possible alteration of sensorium, however there are no side effects noted in the medical record.

In his report, Dr. Salerno noted that the IME performed by Dr. Rooney indicate that mild functional impairments exist. However, in his professional medical opinion, there was insufficient objective medical evidence to support a finding that Ms. Blagg is unable to perform the duties of any job position.

The second independent medical review as conducted on behalf of the Committee was performed by Dr. William Tontz. Dr. Tontz was also provided with the entire claims appeal file. In his report, Dr. Tontz notes the claimant is a 67 year old female with low back pain radiating to the hip. A medical report from January 22, 2015 discloses the claimant has tried chiropractic care, epidural steroid injections, anti-inflammatories and muscle relaxers. The examination notes good strength in the bilateral upper and lower extremities with a limp associated with the right leg. The examination notes from September 6, 2017 demonstrates chronic right heel pain. Further, office reports from September 20, 2015 demonstrates good strength throughout and normal reflexes are noted. An MRI of the lumbar spine demonstrates no significant neural impingement.

February 1, 2017
Page 11

In his report to the Committee, Dr. Tontz states that based on the available medical information and records, there are no functional impairments that would affect the patient's ability to "perform any occupation from August 6, 2016 to present (or any portion of the review period)." There is no part of the medical evidence that objectively documents that the patient is unable to perform the responsibilities of any job position.

The IME Report notes good strength in the bilateral upper and lower extremities with a limp on the right leg. The office notes from September 20, 2015 demonstrates good strength throughout. In addition, the submitted medical records illustrate normal reflexes. Further, an MRI of the lumbar spine demonstrates no significant neural impingement.

Further, in his report to the Committee, Dr. Tontz noted that the expected signs and symptoms that would prevent someone from performing the duties of any job position would be "atrophy, profound weakness or joint contractures which are not present in the records." Further, Dr. Tontz noted that there is no evidence of mind altering side effects of any medication that would support a finding that Ms. Blagg is unable to perform any occupation and there is no documentation to support a finding that she is experiencing any side effects from the prescription medication.

Thus, Dr. Tontz concluded there is no clear clinical evidence of radiculopathy or imaging evidence of spinal instability. Ms. Blagg has chronic subjective pain, but there is no clear evidence of functional limitations to support medically appropriate restrictions. In the opinion of Dr. Tontz, there is insufficient medical evidence to support a disability finding in this case.

Because (1) an independent medical examination concluded that Ms. Blagg is not restricted from performing the requirements of her job; (2) a transferable skills analysis concluded that Ms. Blagg would be capable of performing other jobs; (3) a labor market study concluded that qualifying jobs exist in Ms. Blagg's geographic region; and (4) two independent medical reviewers concluded that the medicals records contain no objective evidence that Ms. Blagg is disabled under the "any occupation" standard, the Committee has determined that in accordance with the "any occupation" disability definition as set forth under the 2016 LTD SPD (*See page 137, 2016 LTD SPD*) your client is not disabled under the terms of the LTD Plan for any time periods on or after August 6, 2016. Thus, the Committee hereby upholds the denial of your client's claim for long term disability benefits under the Plan.

**Additional Information**

Pursuant to Benefit Determination and Claims Appeal Procedure for the Plan, the final review has been a "fresh" look, without deference to any prior denial decision. In addition, the final review was conducted by persons not involved in the prior denial decision, and who are not a subordinate of the prior decision maker.

February 1, 2017
Page 12

You are entitled to receive, upon written request and free of charge, any documents, records and other information that you have not yet received and that were relied upon in making the benefit determination, or that were submitted, considered or generated in the course of making the benefit determination, or that demonstrate compliance with the Plan claims processing administrative procedure.

This review is the last and final review of your client's claim for long term disability benefits under the procedures adopted by the Plan. Your client has the right to pursue a civil action under Section 502 of Employee Retirement Income Security Act, 29 U.S.C. §1132. A civil action must be brought within one (1) year from the date of the letter.

The review of the claim applied the provisions of the Plan, including the provisions of the applicable LTD SPD, as well as the facts and medical reports and information included in the administrative record of the claim. Other than the documents referred to in the letter, no other internal rule, guideline, protocol or other similar criterion was relied upon in making the determination.

On Behalf of the EATON CORPORATION HEALTH AND WELFARE
ADMINISTRATIVE COMMITTEE as Plan Administrator

By: _Douglas J. Maxximax McKee_

## DISABILITIES THE PLAN COVERS

The Long Term Disability Plan provides you with continuing income if a covered disability prevents you from working for longer than 26 weeks.

To be eligible for LTD benefits, you must be covered by the Plan and:

- Have a covered disability as defined below;

- Be under the continuous care of a licensed health care practitioner; and

- Sign and return a copy of the Overpayment Reimbursement Agreement provided by the Claims Administrator. Benefit payments are suspended until the Claims Administrator receives this form.

For a physical disability, the term "health care practitioner" means a fully licensed Doctor of Medicine (M.D.), Doctor of Osteopathy (D.O.), Dental Surgery (D.D.S.), Doctor of Podiatry Medicine (D.P.M.), Doctor of Chiropractic (D.C.), Psychologist, Physician's Assistant (P.A.), Nurse Practitioner (N.P.) or Certified Nurse Midwife (C.N.M.).

If mental illness or alcohol or chemical dependency keeps you from working, you must be receiving continuous care from a psychiatrist or licensed psychologist. For alcohol or chemical dependency, you must be receiving treatment in an accredited residential or outpatient substance abuse treatment facility. Your psychiatrist or licensed psychologist must verify your disability to the satisfaction of the Claims Administrator.

### Covered Disability

You are considered to have a covered disability (see "Disabilities the Plan Does Not Cover" below for exceptions) under the Plan if you are unable to work as the result of an occupational or non-occupational illness or injury. The work you are unable to do is defined differently over the course of a disability. You will be considered disabled:

| If During ... | Your Disability Makes You ... |
|---|---|
| Months 1 – 23, including six months of short term disability | Totally and continuously unable to perform the essential duties of your regular position or any suitable alternative position with the Company. |
| Month 24 until you are no longer disabled or retire | Totally and continuously unable to engage in any occupation or perform any work for compensation or profit for which you are, or may become, reasonably well fit by reason of education, training or experience — at Eaton or elsewhere. |

The Company, at its sole discretion, determines the availability and suitability of alternative positions at Eaton.

### Disabilities the Plan Does Not Cover

The Plan does not pay benefits if your disability is the result of:

- Attempted suicide or intentionally self-inflicted injury, while sane or insane;

- Participation in (or as a consequence of prior participation in) the commission of a felony;

- Any act of war, declared or undeclared; service in the armed forces of any country; or performing police duties as a member of any military organization;

- Cosmetic procedures. However, the Plan will pay disability benefits related to reconstructive surgery following a mastectomy; surgery the Medical Plan determines to be medically necessary to correct damage caused by an accident, injury or congenital defect; or complications that prevent your return to work within the normal recovery period for a cosmetic surgery procedure; or

- A preexisting condition, or related to a preexisting condition, if the disability starts within the 12-month period after the date your long term disability coverage becomes effective.

**When Long Term Disability Benefits End**

If you have a covered disability and are receiving long term disability benefits, your benefits end when the earliest of the following events occurs:

- You no longer have a covered disability under the Plan, as determined by the Claims Administrator;

- The Company, at its sole discretion, offers you — at your pre-disability base pay — employment that accommodates any medical restrictions your health care practitioner orders;

- The first day for which you are unable to provide satisfactory evidence of a covered disability;

- You do not follow the treatment plan ordered by your health care practitioner;

- You fail to cooperate with a scheduled independent medical examination (IME) or functional capacity evaluation (FCE);

- You begin work for wage or profit with any employer or through self-employment, unless the work is rehabilitative employment (see below) approved by the Claims Administrator;

- The applicable period of benefit payments ends based on your age (see chart on page 140);

- You complete the vocational rehabilitation program developed for you, or you decline to participate in the program or fail to complete it;

- You are incarcerated;

- You die; or

- The Plan terminates.

You cannot substitute holiday pay or vacation pay for payment of disability benefits.

**Modified Duty Employment**

While you are receiving disability benefits, it may be determined that you could return to work in your regular job if your duties were modified to accommodate your current health limitations. Such a determination is made by your health care provider or a health care provider selected by the Company or Claims Administrator. The Claims Administrator will work with you and your work location to determine if the suggested modifications can be reasonably accommodated. Your benefits end if you do not accept modified duty employment that has been designed for you.

In modified duty employment, you work at your regular job with either restrictions on the work you do or a reduction in the number of hours you work. The Company does not create positions for the purpose of modified duty employment. Any permanent job restrictions are analyzed in accordance with the Americans with Disabilities Act.

You receive your regular pay while working in modified duty employment. Modified duty employment may last up to 90 days. After 90 days, you must return to your regular job, go back on disability or receive an extension that has been approved by the Claims Administrator, Plan Administrator and Company.

**Rehabilitative Employment During Disability**

If you are eligible to receive LTD benefits but believe that you may be able to return to active work either with another employer or in a self-employed arrangement, you may request approval for a rehabilitative employment period.

If approved, you will be eligible for long term disability benefits for up to a three-month period of rehabilitative employment. The LTD benefit you would otherwise receive is reduced by 50% of the gross income you earn from rehabilitative employment.

You may request additional three-month periods of rehabilitative employment, up to a maximum period of 24 months for any one disability.

Contact the Claims Administrator for an application and additional information.

**How Payments Are Made**

Long term disability benefits are paid monthly. Benefits are prorated for any period of disability lasting less than a month.

If amounts from another source for which the Plan reduces benefits are paid to you in a lump sum, the Claims Administrator considers those benefits as if they were paid in monthly installments — prorated over the period the lump sum was intended to cover.

**Medical Information**

Objective findings of a disability are necessary to substantiate the period of time your health care practitioner indicates you are disabled. Objective findings are those that can be observed by your health care practitioner through objective means, not from your description of the symptoms. Objective findings include:

- Physical examination findings (functional impairments/capacity);
- Diagnostic test results/imaging studies;
- Diagnoses;
- X-ray results;
- Observation of anatomical, physiological or psychological abnormalities; and
- Medications and/or treatment plan.

**Requirement to Update Medical Information**

If your claim is approved by the Claims Administrator, your health care practitioner will periodically be requested to submit updated medical information regarding your continuing disability. Payments will end if information required to revalidate your claim is not received within 30 days of the initial request. You are responsible for the expense involved in obtaining updated medical information regarding your disability.

The Claims Administrator may require you, from time to time, to undergo an independent medical examination (IME) and/or a functional capacity evaluation (FCE). If you do not cooperate with this request (for example, you fail to keep a scheduled appointment), your benefits will end. If the Claims Administrator requests that you undergo an independent medical examination and/or a functional capacity test, the examination is made at the Company's expense.

| Benefit | Claims Administrator | Claims Filing Address |
|---|---|---|
| Dental Plan | For written inquiries:<br>Delta Dental<br>P.O. 30416<br>Lansing, MI 48909<br>1-866-EATON03<br>(1-866-328-6603) | Claims filing and initial appeal:<br>Delta Dental<br>P.O. 9085<br>Farmington Hills, MI 48333-9085<br>Second Appeal:<br>Eaton Health and Welfare<br>Administrative Committee<br>c/o Eaton<br>1000 Eaton Boulevard<br>Cleveland, OH 44122 |
| Vision Plan | EyeMed Vision Care LLC<br>ATTN: Vision Care Department<br>4000 Luxottica Place<br>Mason, Ohio 45040<br>1-866-723-0513 | EyeMed Vision Care LLC<br>ATTN: Quality Assurance Department<br>4000 Luxottica Place<br>Mason, Ohio 45040<br>1-866-723-0513 |
| Eaton Corporation Flexible Benefits Program, which includes:<br>• Eaton Corporation Health Care Reimbursement Account Plan<br>• Eaton Corporation Dependent Care Reimbursement Account Plan | Acclaris, Inc.<br><br>1-866-203-9358 | Claims filing and initial appeal:<br>Acclaris, Inc.<br>P.O. Box 25171<br>Lehigh Valley, PA 18002-5172<br>1-866-203-9358<br>Fax: 1-813-830-7900<br>Second Appeal:<br>Eaton Health and Welfare<br>Administrative Committee<br>1000 Eaton Boulevard<br>Cleveland, OH 44122 |
| Counseling Program, Legal/Financial Consultation, Concierge, Child and Elder Care Services | Beacon Health Options<br>48651 Alpha Drive, Suite 150<br>Wixom, MI 48393-3442<br>1-800-531-7988<br>www.achievesolutions.net | Beacon Health Options<br>48651 Alpha Drive, Suite 150<br>Wixom, MI 48393-3442<br>1-800-531-7988<br>www.achievesolutions.net |
| Wellness Information and Tools Program, Tobacco Cessation Program, and Eaton Center On-site Health Center | Eaton Health and Welfare<br>Administrative Committee<br>1000 Eaton Boulevard<br>Cleveland, OH 44122<br>1-440-523-5000 | Eaton Health and Welfare<br>Administrative Committee<br>1000 Eaton Boulevard<br>Cleveland, OH 44122<br>1-440-523-5000 |
| Adoption Benefits Plan | Eaton Service Center at Fidelity<br>1-866-EATON01<br>(1-866-328-6601) | Eaton Service Center at Fidelity<br>1-866-EATON01<br>(1-866-328-6601) |
| Eaton Corporation Disability Plan, which includes:<br>• Short Term Disability Plan (STD Plan)<br>• Long Term Disability Plan (LTD Plan) | General Correspondence:<br>Sedgwick<br>P.O. Box 14449<br>Lexington, KY 40512-4449<br>1-866-869-6387 | Initial appeal:<br>Sedgwick<br>P.O. Box 1981<br>Chicago, IL 60690<br>1-866-869-6387<br>Second Appeal:<br>Eaton Health and Welfare<br>Administrative Committee<br>1000 Eaton Boulevard<br>Cleveland, OH 44122 |

## ERISA RIGHTS DO NOT APPLY TO CERTAIN PROGRAMS

Your Health Savings Account is not an ERISA covered plan. As a result, Eaton has no fiduciary responsibility under ERISA with respect to the HSA, and claims with respect to the HSA are managed solely by Fidelity Investments.

ActiveHealth programs and Expert Medical Opinion, as described on pages 43 and 44, are not subject to ERISA.

## PLAN INTERPRETATION

Benefits under the Eaton Plans will be paid only if the Plan Administrator and/or the appointed Claims Administrator decides that the applicant is entitled to them under the terms of the Plan. The Plan Administrator and/or the Claims Administrator has discretionary authority to determine eligibility for benefits and to construe any and all terms of the Plan, including but not limited to any disputed or doubtful terms. The Plan Administrator and/or Claims Administrator also has the power and discretion to determine all questions arising in connection with the administration, interpretation and application of the Plan. Any and all determinations by the Plan Administrator and/or Claims Administrator will be conclusive and binding on all persons, except to the extent reviewable by a court with jurisdiction under ERISA after giving effect to the time limits described in the "Claims Appeal Procedure" section of this booklet.

## COLLECTIVE BARGAINING AGREEMENT

If your employment is covered by a collective bargaining agreement that specifically allows for your participation in the Plans described in this booklet, your participation is subject to the terms and conditions of the collective bargaining agreement and the Plans.

Participants and beneficiaries may obtain a complete list of the Plan's sponsoring organizations by writing to the Plan Administrator at the address shown under "Administration and Other Information — Plan Administrator."

As a covered employee, you may obtain a copy of your respective collective bargaining agreement by writing to the Plan Administrator at the address shown under "Administration and Other Information — Plan Administrator." The Company may charge you a reasonable amount for the copy. As a covered employee, provided you give reasonable advance notice of your visit, you may also examine a copy of your respective collective bargaining agreement at Eaton at that same address or at the union office during normal business hours.

Participants and beneficiaries may obtain a complete list of the Plan's sponsoring organizations by writing to the Plan Administrator at the address shown under "Administration and Other Information — Plan Administrator."

# Social Security Administration
# **Retirement, Survivors and Disability Insurance**
## Notice of Award

Mid-America Program Service Center
601 East Twelfth Street
Kansas City, Missouri 64106-2817
Date:  May 1, 2015
Claim Number:  ▬▬▬▬▬▬

KATHY J BLAGG
385 HONEY HILL RD
SEARCY, AR 72143



EXHIBIT

C

You are entitled to monthly disability benefits beginning October 2014.

## **The Date You Became Disabled**

We found that you became disabled under our rules on April 8, 2014.

To qualify for disability benefits, you must be disabled for five full calendar months in a row.  The first month you are entitled to benefits is October 2014.

## **What We Will Pay And When**

- You will receive $9,096.80 around May 7, 2015.

- This is the money you are due for October 2014 through April 2015.

- Your next payment of $1,206.00, which is for May 2015, will be received on or about the second Wednesday of June 2015.

- After that you will receive $1,206.00 on or about the second Wednesday of each month.

- These and any future payments will go to the financial institution you selected.  Please let us know if you change your mailing address, so we can send you letters directly.

- Later in this letter, we will show you how we figured these amounts.

- The day of the month you receive your payments depends on your date of birth.

See Next Page







## Your Benefits

The following chart shows your benefit amount(s) before any deductions or rounding.  The amount you actually receive(s) may differ from your full benefit amount.  When we figure how much to pay you, we must deduct certain amounts, such as Medicare premiums.  We must also round down to the nearest dollar.

| Beginning Date | | Benefit Amount | Reason |
|---|---|---|---|
| October | 2014 | $1,277.30 | Entitlement began |
| December | 2014 | $1,299.00 | Cost-of-living adjustment |
| January | 2015 | $1,311.40 | Credit for additional earnings |

## Information About Medicare

Your Medicare Part A (hospital insurance) and Part B (medical insurance) start April 2015.

We will send you a Medicare card.  You should take this card with you when you need medical care.  If you need medical care before receiving the card and your coverage has already begun, use this letter as proof that you are covered by Medicare.

IMPORTANT:  A Medicare law requires some higher income persons to pay higher premiums.  The law applies to premiums for Medicare Part B (medical insurance) and prescription drug coverage.  The law generally affects individuals with incomes higher than $85,000 and couples with incomes higher than $170,000.  We will contact the Internal Revenue Service to get information about your income.  If we decide that you have to pay higher premiums, we will send a letter explaining our decision.  The higher amount will be effective April 2015.  For more information, please visit www.socialsecurity.gov on the Internet or call us toll-free at 1-800-772-1213 (TTY 1-800-325-0778).

## Medicare Prescription Drug Plan Enrollment

Now that you are eligible for Medicare, you can enroll in a Medicare prescription drug plan (Part D).

To learn more about the Medicare prescription drug plans and when you can enroll, visit www.medicare.gov or call 1-800-MEDICARE (1-800-633-4227; TTY 1-877-486-2048).  Medicare also can tell you about agencies in your area that can help you choose your prescription drug coverage.

If you have limited income and resources, we encourage you to apply for the extra help that is available to assist with Medicare prescription drug costs. The extra help can pay the monthly premiums, annual deductibles and prescription co-payments.  To learn more or apply, please visit www.socialsecurity.gov, call 1-800-772-1213 (TTY 1-800-325-0778) or visit the nearest Social Security office.



## Information About Representative's Fees

Your representative told us that a fee will not be charged.  If a fee is charged, your representative must receive approval from the Social Security Administration.

## Other Social Security Benefits

This benefit is the only benefit you can receive from us at this time.  In the future, if you think you might qualify for another benefit from us, you will need to apply again.

## Your Responsibilities

We based our decision on information you gave us.  If this information changes, it could affect your benefits.  For this reason, it is important that you report changes to us right away.

We have enclosed a pamphlet, "What You Need To Know When You Get Social Security Disability Benefits."  It tells you what you must report and how to report.  Please be sure to read the parts of the pamphlet that tell you what to do if you go to work or your health improves.

A vocational rehabilitation or employment services provider may contact you to help you in going to work.  The provider may be from a State agency or work under contract with Social Security.

If you go to work, we have special rules that let us continue your cash payments and health care coverage.  To learn more about how work and earnings affect disability benefits, visit our website at www.socialsecurity.gov/work/.  You may also call or visit any Social Security office to ask for the following publications:

- Social Security - Working While Disabled...How We Can Help (SSA Publication No.  05-10095).

- Social Security - If You Are Blind–How We Can Help (SSA Publication No.  05-10052).

## Your Benefits May Be Taxed

You may have to pay taxes on the benefits you get from us.  Part of your Social Security benefits may be taxed if:

- you are single and your total income is more than $25,000 or
- you are married and you and your spouse have total income of more than $32,000.



 

Page 4 of 6

You can decide if you want to have federal taxes withheld from your benefits. If you want taxes withheld, you need to complete and return a Form W-4V, Voluntary Withholding Request. You can get Form W-4V from the Internal Revenue Service by calling 1-800-829-3676. You can also get this form at www.socialsecurity.gov/planners/taxes.htm on our website. After you complete and sign the form, return it to your local Social Security office by mail or in person.

You can find more information on paying taxes in the enclosed pamphlet, "What You Need To Know When You Get Social Security Disability Benefits".

**Other Information**

We are sending a copy of this notice to SARAH FELDT.

**Do You Disagree With The Decision?**

If you do not agree with this decision, you have the right to appeal. We will review your case and look at any new facts you have. A person who did not make the first decision will decide your case. We will review the parts of the decision that you think are wrong and correct any mistakes. We may also review the parts of our decision that you think are right. We will make a decision that may or may not be in your favor.

- You have 60 days to ask for an appeal.
- The 60 days start the day after you receive this letter. We assume you received this letter 5 days after the date on it unless you show us that you did not receive it within the 5-day period.
- You must have a good reason if you wait more than 60 days to ask for an appeal.
- You can file an appeal with any Social Security office. You must ask for an appeal in writing. Please use our "Request for Reconsideration" form, SSA-561-U2. You may go to our website at www.socialsecurity.gov/online/ to find the form. You can also call, write, or visit us to request the form. If you need help to fill out the form, we can help you by phone or in person.

**Things To Remember For The Future**

We are sending you this letter in both a standard print version and a large print version. You will receive them in separate envelopes.

**Suspect Social Security Fraud?**

Please visit http://oig.ssa.gov/r or call the Inspector General's Fraud Hotline at 1-800-269-0271 (TTY 1-866-501-2101).



## If You Have Questions

We invite you to visit our website at www.socialsecurity.gov on the Internet to find general information about Social Security.  If you have any specific questions, you may call us toll-free at 1-800-772-1213, or call your local Social Security office at 1-855-686-1470.  We can answer most questions over the phone.  If you are deaf or hard of hearing, you may call our TTY number, 1-800-325-0778.  You can also write or visit any Social Security office.  The office that serves your area is located at:

> SOCIAL SECURITY
> 701 AIRPORT LOOP
> SEARCY AR 72143

If you do call or visit an office, please have this letter with you.  It will help us answer your questions.  Also, if you plan to visit an office, you may call ahead to make an appointment.  This will help us serve you more quickly when you arrive at the office.

Carolyn W. Colvin
Acting Commissioner of
Social Security







## PAYMENT SUMMARY

**Your Payment Of $9,096.80**

Here is how we figured your
first payment:

      Benefits due for October 2014
      through April 2015
      including any cost of living increase and
      considering work and earnings through 2014,
      less monthly rounding of benefits ........................$ 9,306.60

      Amounts we subtracted because of:

-    premiums for medical insurance
  through April 2015 ...............................$    104.90

-    additional premium due
  one month in advance ..........................    104.90

      Total subtractions ...............................    209.80

This equals the amount of
your first payment ......................................$ 9,096.80

**Your Regular Monthly Payment**

Here is how we figured your
regular monthly payment effective May 2015:

      You are entitled to a monthly benefit of .................$ 1,311.40

      Amounts we subtracted because of:

-    premiums for medical insurance ..................    104.90

This equals .........................................  1,206.50

-    rounding (we must round down to
  a whole dollar) .................................     .50

This equals the amount of
your regular monthly payment .............................$ 1,206.00